# EXHIBIT "A"

Tenn. Op. Atty. Gen. No. 25-009 (Tenn.A.G.), 2025 WL 1084384

Office of the Attorney General

State of Tennessee
Opinion No. 25-009
March 28, 2025

**Obligations under the Age-Appropriate Materials Act of 2022**

 **\*1**  The Honorable Charlie Baum
State Representative
425 Rep. John Lewis Way N.
Suite 620 Cordell Hull Building
Nashville, Tennessee 37243

## Question 1

What are the proper procedures and applicable standards under Tenn. Code Ann. § 49-6-3801 *et seq.*, Tenn. Code Ann. § 49-6-3803(b)(1), and Tenn. Code Ann. § 39-17-901 for school library books and materials to be challenged for removal or removed?

## Opinion 1

The referenced statutes require local boards of education and public charter school governing bodies ("local school bodies") to adopt procedures to maintain school libraries that are age-appropriate for K-12 students and consistent with schools' educational missions. The statutes grant those local school bodies broad discretion to develop and implement the details of those procedures. And while the statutes specify standards for removing materials that are unsuitable for K-12 students' age or maturity, they allow local school bodies to determine what materials serve a school's educational purpose.

## Question 2

Do the above statutes provide multiple or alternative methods for school library materials to be challenged and/or removed?

## Opinion 2

The referenced statutes generally provide local school bodies with the flexibility to develop procedures for facilitating challenges to, and removal of, school library materials. But the statutes require local school bodies to determine whether a material is age-appropriate and suitable within sixty days of a student's, parent's, or employee's request for review. If the local school body fails to make a timely determination, the student, parent, or employee may ask the State Textbook and Instructional Materials Quality Commission to evaluate the material.

Local school bodies must also maintain school library collections consistent with Tenn. Code Ann. § 49-6-3803(b)(1) and (2) by: (a) adopting procedures to develop collections that are age-appropriate and suitable for, and consistent with, the educational mission of a particular school, and (b) periodically reviewing the appropriateness and suitability of materials in those collections. But local school bodies have discretion in how to implement those procedures, as well as to adopt removal procedures beyond those the statutes specify.

Case 3:25-cv-00429   Document 24-1   Filed 05/30/25   Page 2 of 6 PageID #: 213

**Question 3**

What is the proper procedure for determining whether a school library book or material should be removed under Tenn. Code Ann. § 49-6-3803(b)(1) and who makes that determination?

**Opinion 3**

See response to Question 2.

**Question 4**

Does Tenn. Code Ann. § 49-6-3803(b)(1) require the removal of books or materials on subjects of biology, science, anatomy, mythology, and/or art which contain nudity, as defined in Tenn. Code Ann. § 39-17-901, when the statutorily referenced body parts lack opaque coverings?

**Opinion 4**

 **\*2**  When a local school body determines that material falls within Tenn. Code Ann. § 49-6-3803(b)(1), it must be removed.

**Question 5**

Does the language of Tenn. Code Ann. § 49-6-3803(b)(1) require the removal of educational books containing nudity such as biology, anatomy and art? Or does the language of Tenn. Code Ann. § 49-6-3803(b)(1) only encompass sexually explicit depictions of nudity, referenced in Tenn. Code Ann. § 49-6-3803(b)(1) as sexual excitement, sexual conduct, excess violence, or sadomasochistic abuse?

**Opinion 5**

Tenn. Code Ann. § 49-6-3803(b)(1)'s obligation to remove books containing nudity does not turn on whether they also contain descriptions or depictions of sexual excitement, sexual conduct, excess violence, or sadomasochistic abuse.

**Question 6**

If books or materials must be removed from school libraries under Tenn. Code Ann. § 49-6-3803(b)(1), does state law allow those same books to be utilized in classroom instruction?

**Opinion 6**

Yes, subject to other conditions.

**Question 7**

If books or materials are required to be removed from school libraries under Tenn. Code Ann. § 49-6-3803(b)(1), does state law allow those same books to be utilized in classroom instruction if the book is part of the state approved curriculum standard?

**Opinion 7**

Yes, subject to other conditions.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  2

<u>**ANALYSIS**</u>

The Age-Appropriate Materials Act of 2022, as amended ("the Act"), gives Tennessee local school bodies broad discretion to adopt and implement procedures to maintain a library collection that is age-appropriate for school children and suitable for, and consistent with, a school's educational mission. The Act requires schools operated by local school bodies to maintain on their websites a current list of materials in the school's library collection, and it imposes three additional requirements: Local school bodies must (1) adopt a policy for developing and periodically reviewing school library collections, including reviews at the behest of a student, parent or guardian, or school employee; (2) respond to such student/parent/employee requests to evaluate material with a determination of age-appropriateness and suitability (or not) within sixty days; and (3) remove any material that the local school body determines is inappropriate for K-12 students or inconsistent with the school's educational mission. Although the Act does not prescribe specific procedures for observing these requirements, it sets out certain standards for determining that materials are not age-appropriate and must be removed. Prohibited materials include those that contain nudity, or descriptions or depictions of certain sexual conduct, as defined in the Act. The Act on its face applies only to school library collections and does not preclude the use of otherwise-covered materials in course curriculum.

**1-3**. The Act requires local school bodies to adopt procedures to achieve certain ends— generally speaking, to maintain school library collections consistent with the Act—but it grants them discretion in deciding how to accomplish those purposes. The Act also provides standards for identifying inappropriate materials.

 **\*3** The Act mandates that "[m]aterials in a library collection must be suitable for the age and maturity levels of the students who may access the materials and must be suitable for, and consistent with, the educational mission of the school." Tenn. Code Ann. § 49-6-3803(a). To that end, the Act requires each local school body to "adopt a policy for developing and reviewing school library collections." *Id.* § 49-6-3803(d).

That policy "must include" three procedures. First, local school bodies must adopt a procedure for developing a library collection at each school that is appropriate for student age and maturity levels and consistent with the school's educational mission. *Id.* § 49-6-3803(d)(1). Second, local school bodies must adopt a procedure to "receive and evaluate feedback from a student, a student's parent or guardian, or a school employee" about a material or materials in the library collection "of the student's or employee's school." *Id.* § 49-6-3803(d)(2). Finally, local school bodies must adopt a procedure to "periodically review the library collection at each school to ensure" its compliance with the Act. *Id.* § 49-6-3803(d)(3). The Act does not prescribe the details of these procedures, such as directing the methods by which students and other parties may provide feedback on materials. And the Act also allows local school bodies and individual schools to develop and implement policies for removing materials from a library collection in addition to those the Act requires. *Id.* § 49-6-3803(g). Additionally, the Act explicitly provides that the procedures in the Act are not the exclusive procedures for removing materials from a school's library collection. *Id.* § 49-6-3803(e).

The Act requires local school bodies to respond to any request to review library material under § 49-6-3803(d)(2) within a certain time period. Local school bodies have sixty days from the date on which a student/parent/employee provides feedback to "evaluate and determine" whether the material complies with the Act. *Id.* § 49-6-3803(e).

In addition to outlining procedures for reviewing and removing materials, the Act requires removal of materials satisfying certain standards. Whether review proceeds under § 49-6-3803(d)(1), (d)(2), or (d)(3), if the local school body "determines that material contained in the school's library collection is not appropriate for the age and maturity level of the students who may access the materials," or is unsuitable for or inconsistent with the school's ""educational mission," "then the material *must* be removed" from the collection. *Id.* § 49-6-3803(f) (emphasis added).

The Code contemplates appellate review by the State Textbook and Instructional Materials Quality Commission in certain circumstances. First, a local school body's failure to provide a determination within sixty days allows the student, parent, or employee to ask the Commission to evaluate the material. *Id.* § 49-6-3803(e). Second, a separate statute requires the

Commission to create a timeline and process for "a student, a student's parent or guardian, or a school employee" to appeal such a determination of *inappropriateness* or *unsuitability* by a local school body that results in the material's removal from the school's library. *Id.* § 49-6-2201(m)(1)(C). The Commission's decision—whether that challenged material is "appropriate" or ""inappropriate"— applies to every local school body in the State. *Id.*; *see also id.* § 49-6-2201(m)(1)(D). And depending on the Commission's findings on appeal, that statute dictates that the challenged material "shall" be "include[[d]" or "remove[d]" from each of the local school bodies' libraries. *Id.* § 49-6-2201(m)(1)(C)(ii). The Act defines two categories of material that are "not appropriate for the age or maturity level" of K-12th graders and "must not be maintained in a school's library collection." *Id.* § 49-6-3803(b). The first category covers material that "[i]n whole or in part contains nudity, or descriptions or depictions of sexual excitement, sexual conduct, excess violence, or sadomasochistic abuse." *Id.* § 49-6-3803(b)(1). The second category encompasses material that is "patently offensive" or "appeals to the prurient interest." *Id.* § 49-6-3803(b)(2). The Act cross-references Tenn. Code Ann. § 39-17-901 to define each of the relevant terms. That Section defines nudity, for example, to mean:

> **\*4** the showing of the human male or female genitals, pubic area, or buttocks with less than a fully opaque covering or the showing of the female breast with less than a fully opaque covering of any portion below the top of the nipple, or the depiction of covered male genitals in a discernibly turgid state.

*Id.* § 39-17-901(9).

The Act does not, however, define what material is "suitable for, and consistent with, the educational mission of the school." *See, e.g., id.* § 49-6-3803(d)(1). So local school bodies retain discretion to prescribe criteria for determining what material is unsuitable for, or inconsistent with, a school's educational mission and must be removed on that basis. *See id.* § 49-6-3803(e), (f). And while the State Textbook and Instructional Materials Quality Commission is charged with issuing guidance for local school bodies to use when determining whether materials are age appropriate and educationally suitable, *id.* § 49-6-2201(m)(1)(A), those local bodies retain discretion to make the initial determination of whether particular materials fit that definition, *id.* § 49-6-3803(d), (e). So long as a local body makes a timely determination, moreover, no student, parent, or teacher has an automatic right to appeal the body's decision to the Commission. *Cf. id.* § 49-6-2201(m)(1)(B)(ii) (foreseeing that a local school body might create such an appeal process).

Preserving local discretion in these ways makes good sense. After all, "the education of the Nation's youth is primarily the responsibility of parents, teachers, and ... local school officials," in addition to state officials. *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 (1988). And local officials have long exercised that discretion, including by excluding or removing "vulgar" books from their libraries based on the books' "educational suitability." *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 871 (Brennan, J.) (plurality op.). Indeed, federal courts have recognized that such questions are "a core educational policy matter" for ""local school boards." *See, e.g., ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1225-26 (11th Cir. 2009).

In short, the Act imposes general procedural requirements and gives local school bodies discretion in how to implement them, consistent with local school boards' traditional prerogative to determine material suitability. But the Act requires removal of materials when a local school body determines they meet the Act's standards for inappropriate material.

**4-7**. The Act provides that materials containing nudity cannot appear in a covered school's library collection, regardless of whether the nudity's depiction is sexually explicit. But such materials nonetheless may be used as part of a course curriculum.

By its plain text, the Act provides that "nudity"—the depiction of body parts as defined in the Act with "less than a fully opaque covering"—"must not be maintained" in a covered school's library collection. *See id.* §§ 39-17-901(9), 49-6-3803(b)(1). Although the same provision also bars material describing or depicting "sexual excitement, sexual conduct, excess violence, or sadomasochistic abuse," § 49-6-3803(b)(1)'s use of the disjunctive "or" makes clear that nudity in general, not just nudity

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**The Honorable Charlie Baum, Tenn. Op. Atty. Gen. No. 25-009 (2025)**

associated with "sexual excitement," etc., falls within the Act's coverage. *See id.* § 49-6-3803(b)(1) (barring material that "contains nudity, *or* descriptions or depictions of sexual excitement, sexual conduct, excess violence, or sadomasochistic abuse" (emphasis added)); *see also, e.g.*, *United States v. Banks*, 679 F.3d 505, 506 (6th Cir. 2012). So if a local school body determines that material contains nudity as defined in the Act, the General Assembly has mandated that it "must be removed." Tenn. Code Ann. § 49-6-3803(f).

**\*5** But the Act does not require local school bodies to exclude covered materials from schools altogether. It applies only to "[m]aterials in a library collection." *Id.* § 49-6-3803(a). And the Act expressly excludes "materials made available to students as part of a course curriculum" from the definition of "[l]ibrary collection." *Id.* § 49-6-3802(1). Thus, the Act allows that otherwise covered materials may be used in classroom instruction, consistent with state and local curriculum requirements.

Jonathan Skrmetti
Attorney General and Reporter
J. Matthew Rice
Solicitor General
Virginia N. Adamson
Strategic Litigation Counsel & Assistant Solicitor General
Joseph M. Fiorile
Strategic Litigation Unit Honors Fellow

Tenn. Op. Atty. Gen. No. 25-009 (Tenn.A.G.), 2025 WL 1084384

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 3:25-cv-00429    Document 24-1    Filed 05/30/25    Page 6 of 6 PageID #: 217

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

5