# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

RACHEL ROE, et al.,

Plaintiffs,

v.

RUTHERFORD COUNTY BOARD OF
EDUCATION; JAMES SULLIVAN,

Defendants.

Case No. 3:25-cv-00429
Judge Eli Richardson
Magistrate Judge Alistair Newbern

## JOINT MOTION FOR DISCOVERY CONFERENCE

The parties, by and through counsel, and pursuant to Fed. R. Civ. P. 26, Section G of the Initial Case Management Order (ECF 27) and Local Rule 37.01(b), and Practice and Procedure Manual (III)(D)(3), respectfully move for a discovery conference regarding a dispute between the parties regarding Defendants Rutherford County Board of Education and James Sullivan, in his official capacity as Director of Rutherford County Schools's responses to Plaintiffs' First Set of Interrogatories and Request for the Production of Documents.

The dispute involves Defendants' assertion of the legislative privilege to withhold the production of documents and expected deposition testimony about the motivations of members of the Rutherford County Board of Education in the book removals at issue in this litigation. Counsel for Plaintiffs and Defendants engaged in good faith negotiations to resolve the dispute through meeting and conferring. The parties have reached an impasse requiring the involvement of the Magistrate Judge and request a discovery conference at the Magistrate Judge's earliest convenience.

1

By this motion, Plaintiffs request that this Court compel Defendants to respond to Interrogatory Nos. 3, 4, 5, 9, 10, 11, and 12, produce information relevant to RFP Nos. 1, 2, 3, 4, 6, which, *inter alia*, seek information regarding Defendants' motivation and decision-making process leading to the Book Removals, and answer deposition questions on these same topics, on the ground that the legislative privilege does not apply to the requested discovery. In the alternative, Plaintiffs respectfully request that the Court order Defendants to comply with the requested discovery on an attorneys' eyes-only basis, so that the parties can thereafter meet and confer about whether the privilege applies to specific documents, information, and testimony, and if needed return to this Court for an in-camera review of the affected discovery and ruling on whether the privilege applies, consistent with the approach taken by this Court in *Nashville Student Organizing Committee v. Hargett*, 123 F. Supp. 3d 967, 970-72 (M.D. Tenn. 2015) (allowing plaintiffs to proceed with depositions and document discovery, with legislators directed to answer questions posed and produce documents subject to claim of privilege on an "attorneys eyes only" basis, to be followed by any disputes being put before the court via filing transcripts or documents under seal for in camera review, until court resolved privilege issue with regard to its application to specific materials or testimony, on which it reserved decision).

Defendants maintain that the legislative privilege applies to the discovery sought by the motion and that requiring depositions under Plaintiffs' alternative request for relief would still unduly undermine the reasons for the privilege.

In support of this motion and in accordance with Local Rule 37.01, Practice and Procedure Manual (III)(D)(3), the parties are subsequently filing a Joint Statement of Discovery Dispute.

Both parties are available for a conference with the Court on February 20, 2026, between 11 a.m. and 12 p.m. EST and between 1 and 2 p.m. EST.

2

Dated: February 12, 2026

Respectfully submitted,

By:  */s/ Theresa House*
ARNOLD & PORTER KAYE SCHOLER
LLP


Anand Agneshwar
Dori Ann Hanswirth
Theresa House
Leah Novak
Zoe Staum
ARNOLD & PORTER KAYE SCHOLER
LLP
250 West 55th Street
New York, NY 10019
(212) 836-7062
anand.agneshwar@arnoldporter.com
dori.hanswirth@arnoldporter.com
theresa.house@arnoldporter.com
leah.novak@arnoldporter.com
zoe.staum@arnoldporter.com

Zee Scout
Lucas Cameron Vaughn
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
zscout@aclu-tn.org
lucas@aclu-tn.org

Kerry Knox
117 S. Academy Street
Murfreesboro, TN 37130
(615) 896-1000
kek@castelliknox.com

*Counsel for Plaintiffs*


**&**

3

**HUDSON, REED & CHRISTIANSEN, PLLC**

By: /s/ Jason N. King
      **JEFF REED, #15000**
      **NICK C. CHRISTIANSEN, #30103**
      **JASON N. KING, #027749**
      16 Public Square North
      P.O. Box 884
      Murfreesboro, TN  37133
      (615) 893-5522
      jreed@mborolaw.com
      nchristiansen@mborolaw.com
      jking@mborolaw.com

      *Counsel for Defendants*

4

## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| RACHEL ROE, et al., | |
| Plaintiffs, | Case No. 3:25-cv-00429 |
| v. | Judge Eli Richardson |
| | Magistrate Judge Alistair Newbern |
| RUTHERFORD COUNTY BOARD OF EDUCATION; JAMES SULLIVAN, | |
| Defendants. | |

## JOINT STATEMENT OF DISCOVERY DISPUTE

On August 7, 2025, Plaintiffs served their First Set of Interrogatories and Request for Production of Documents (the "Requests") on Defendants. The Requests seek documents and communications concerning the motivations and decision-making process leading to Defendants' decisions to remove approximately 150 books (the "Subject Books") from general circulation at school libraries (the "Book Removals")[1]. Decisions with respect to 61 books are at issue in this case. On October 17 and 20, 2025, Defendants objected to 7 out of 14 Interrogatories, and 5 out of 14 Requests for Production (RFPs), on the basis of legislative privilege.

On November 18, 2025, Plaintiffs previewed their disagreement with Defendants' privilege objections in a draft of an extension motion emailed to Defendants. While negotiating those extensions, Plaintiffs told Defendants that they disagreed with Defendants' position on legislative privilege and that they intended to formally raise the matter once discovery extensions were secured. On December 18, 2025, Plaintiffs reached out to Defendants by email to schedule a meet and confer. On December 29, 2025, Plaintiffs emailed Defendants a summary of the

---

[1] The Subject Books include such works of literature as: *Catch 22* by Joseph Heller, *Wicked: The Life and Times of the Wicked Witch of the West* by Gregor Maguire, and *Beloved* by Toni Morrison, among others.

5

discovery issues to be discussed at the meet and confer. The parties met and conferred on January 8, 2026. During meet and conferral, Defendants confirmed that they expected to invoke the same privilege during expected depositions of Defendants and members of the Rutherford County Board of Education (the "Board").[2] On January 14, 2026, Plaintiffs sent a summary email to Defendants requesting their follow up.

On January 21, 2026, the parties reached an impasse. The parties dispute whether Defendants may object to any of Plaintiffs' Requests or expected examination during depositions on the basis of legislative privilege.

---

[2] This would include party James Sullivan (the Director of Rutherford County Schools) and non-parties Claire Maxwell, Francis Rosales, Katie Derby, Tammy Sharp, Caleb Tidwell, Butch Vaugh, and Stan Vaught. ECF 1 ¶ 10; ECF 1-2.

## I.       Plaintiffs' Position

### A.       Legislative Privilege Does Not Shield Discovery for Administrative Acts

The legislative privilege is "strictly construed," *Nashville Student Org. Comm. v. Hargett*, 123 F. Supp. 3d 967, 969 (M.D. Tenn. 2015), and Defendants bear the burden of showing their acts were legislative in both form and substance. Acts that are legislative in *form* include "introducing a budget and signing into law an ordinance," while acts that are legislative in *substance* "establish general policy." *Jaggers v. City of Alexandria*, No. 08-5213, 2009 WL 233244, at \*5 (6th Cir. Feb. 2, 2009). In contrast, "applying known rules and legislation to make a … decision" is generally *not* legislative. *Id.*[3]

Here, Defendant Dr. James Sullivan does not qualify as a legislative actor in any regard. Not a member of the Defendant Board, he instead is appointed as its chief executive officer, serves pursuant to a contract, is responsible "*for carrying out the policies* of [the Board]," ECF 1 ¶¶ 10-11 (emphasis added), and has not established *any* policy. At minimum, he should respond fully.

In regard to the Board, Defendants' own characterization of their decision-making confirms their acts were not legislative. First, Defendants removed 15 books in response to "informal requests," *id.* ¶ 14, but removing a book "without any public meeting or vote" is not "legislative" under any definition of the word. Defendants later removed the other 61 Subject Books by *expressly applying* Policy 4.403 to make decisions about individual book challenges. *Id.* ¶¶ 15, 17. In doing so, Defendants repeatedly emphasized they were applying Policy 4.403. *Id.* ¶¶ 29, 40. The *application* of a rule to specific books is squarely administrative, not legislative. *See Lilly Invs., LLC v. City of Rochester*, 2015 WL 753491, at \*4 (E.D. Mich. Feb. 23, 2015) (applying

---

[3] Other Circuits similarly recognize this distinction. *See, e.g.*, *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 192 (2d Cir. 2019); *Church v. Missouri*, 913 F.3d 736, 751 (8th Cir. 2019); *Baraka v. McGreevey*, 481 F.3d 187, 198-201 (3d Cir. 2007).

zoning rules to grant or deny a permit was administrative).[4]

## B. Defendants Cannot Assert Broad Legislative Privilege Under the Balancing Test Applied by This District

Even if Defendants' actions were legislative–and they are not–legislative privilege is "qualified." *Nashville*, 123 F. Supp. 3d at 969.[5] It can be overcome based on a five-factor test, which examines: "(1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the 'seriousness' of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id.* at 970. All five factors favor disclosure.

*First*, this Court has already held that the evidence Plaintiffs seek is highly relevant to their claims: "[T]he proper inquiry is into the Board's *motivation* in order to determine whether an impermissible motive drove the Board to remove (or restrict) the books at issue." Order, ECF 45 at 20 (emphasis added); *see also id*. at 21 n.17 (an "inquiry into the Board's motivation necessarily involves an examination of the comments and motivations of individual Board members").

The other factors also favor disclosure. As for availability of other evidence, Defendants have produced *no evidence at all* regarding anyone's decision-making for the 61 Subject Books. *See Nashville*, 123 F. Supp. 3d at 970-71 (because "officials seldom, if ever, announce that they

---

[4] In addition to Defendants' general invocation of the legislative privilege for all discovery on "any policy of the Board" (Entry 3), their invocation of the privilege for Entries 4 and 5 of their privilege log (Ex. B) should be overruled. Those entries pertain to materials published online without restriction and reviewed by Board members Vaught and Rosales. Defendants cite no authority that documents, much less public websites, come within the scope of the privilege simply by virtue of them being reviewed. *Cf. League of Women Voters of Mich. v. Johnson*, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018) ("*LOWV*") ("Documents and communications related to non-legislative tasks are not protected by the legislative privilege."); *Heron Interact, Inc. v. Guidelines, Inc.*, 244 F.R.D. 75, 77 (D. Mass. 2007) (documents reviewed by deponent "in preparation for deposition" were not privileged). Entry 5 (erroneously also titled "Entry 4") also fails because, by its own description, it withholds documents relating to Rosales's motivations "to request the removal of 150 books," which is an action any member of the public could take.

[5] Defendants' reliance on the unreported, out-of-circuit district court decision in *Parnell v. School Board of Lake County*, 2024 WL 5508347 (N.D. Fla. Sept. 24, 2024), is unavailing because it is inconsistent with Sixth Circuit precedent on the scope of legislative acts and does not address, much less evaluate, the qualified nature of the privilege.

8

are" motivated by "an invidious discriminatory intent, . . . courts have found that 'the availability of alternative evidence will only supplement—not supplant" evidence of motivation). Moreover, at stake in this case is the serious federal constitutional issue of whether defendant state actors violated Plaintiffs' rights under the First Amendment and issues sharply contested at the Circuit Court level. *See LOWV*, 2018 WL 2335805, at \*5; *Little v. Llano Cnty.*, 138 F.4th 834, 864-65 (5th Cir. 2025) (discussing circuit split on whether public library's rejection of books is government speech). Relatedly, the purpose behind the government's conduct goes to the heart of this question. *See* Order, ECF No. 45 at 20, 21 n.17. The threat "of future timidity by government employees" is also insubstantial because Plaintiffs are suing the Board as an entity, not individual members, and Defendant Sullivan in his official capacity. *Nashville*, 123 F. Supp. 3d at 970. Furthermore, as detailed below, several Board members have already been publicly vocal regarding their motivations.

### C. Legislative Privilege Does Not Apply to Board Members Who Waived It

Parties "holding [legislative] privilege" can waive privilege by "shar[ing] their communications with an outsider." *Turtle Mountain Band of Chippewa Indians v. Jaeger*, 344 F.R.D. 89, 102 (D.N.D. 2022) (cleaned up). The waiver "need not be explicit and unequivocal," *id.*, and privilege regarding motivations can be waived in part by legislators "putting their motives at issue." *Mi Familia Vota v. Fontes*, 691 F. Supp. 3d 1105, 1110 (D. Ariz. 2023).

Frances Rosales, Caleb Tidwell, and Stan Vaught have spoken extensively to the press about the Board's book removal decisions. Exs. C-E. And Rosales and Tidwell have posted repeatedly on Facebook with the express purpose of explaining the rationale for their votes— *putting their motivations at issue*. Ex. F. Allowing Defendants to invoke legislative privilege despite their public comments about their motivations permits them to use the privilege as both a

9

sword and a shield—selectively revealing some details while hiding others. The privilege has been waived.

**Defendants' Position**

### A. The Challenged Decisions Were Legislative in Nature[6]

Plaintiffs incorrectly classify the Board's decisions as merely administrative applications of existing policy. An act which "reflect[s] a discretionary, policymaking decision" that implicates the priorities of a public entity bears "all the hallmarks of traditional legislation." *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998). When officials engage in forward-looking, policy-driven decisions affecting the public at large, those actions are legislative. *See Parnell v. Sch. Bd. of Lake Cnty.*, 2024 WL 5508347, at *2 (N.D. Fla. Sept. 24, 2024)[7]; *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 2021 WL 5882653, at *5–6 (M.D. Tenn. Dec. 13, 2021).[8] After public input, the Board debated evaluation standards, voted district-wide on materials, and formed a librarian advisory committee—all legislative acts protected by privilege.

### B. Legislative Privilege Protects Inquiry into Motivations and Deliberations

Legislative privilege extends beyond voting itself and encompasses information-gathering, deliberation, weighing of sources, and internal discussions undertaken in connection with legislative decision-making. *League of United Latin Am. Citizens v. Abbott*, 708 F. Supp. 3d 870, 877–82 (W.D. Tex. 2023). The interrogatories and document requests at issue are aimed at Board

---

[6] Legislative privilege shields legislators "against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts." *United States v. Brewster*, 408 U.S. 501, 525 (1972). Allegations that legislators were motivated by an improper purpose do not alter the analysis, as "[t]he claim of an unworthy purpose does not destroy the privilege." *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). "The privilege would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial . . ." *Id.*

[7] Holding that a school board's district-wide removal of a book was legislative because it reflected a broad, forward-looking policy judgment, applied system-wide, and remained in effect unless changed—making it a "quintessential policy decision" entitled to legislative privilege.

[8] Holding that a school board's approval of a school budget was a legislative act entitled to protection because it involved a general policy decision affecting the system as a whole.

members' motivations, mental impressions, and deliberative processes. Courts consistently reject efforts to compel legislators to explain why they acted as they did. *See Pittsfield Development, LLC v. City of Chicago,* 2019 WL 13170617, at *3 (N.D. Ill. Nov. 12, 2019).[9] Here, Plaintiffs' discovery requests seek explanations for why books were reviewed, why particular sources or recommendations were accepted or rejected, and what individual Board members read or relied upon. These requests seek to uncover the subjective reasoning behind legislative acts.

Plaintiffs are incorrect that legislative privilege is categorically unavailable to Defendant Sullivan. Courts evaluate the function performed, not the title held. *Johnson v. Metro. Gov't of Nashville & Davidson Cnty.*, 2009 WL 1952780, at *4 (M.D. Tenn. July 2, 2009). Sullivan's communications and analyses prepared for the Board's legislative deliberations are protected.[10]

## C.  Plaintiffs Have Not Shown That the Privilege Should Be Overcome

Legislative privilege "exists in two flavors – qualified and absolute." *Clayland Farm Enters., LLC v. Talbot Cnty., Maryland*, at *2 (D. Md. Oct. 1, 2018). It is qualified in federal criminal cases or where important federal interests cause comity to yield, but absolute in civil suits vindicating private rights. *Id.*; *see also United States v. Gillock*, 445 U.S. 360, 371–73 (1980)[11]; *Tenney* at 377–79.[12] Where, as here, no federal criminal enforcement interests are present, Supreme Court precedent establishes that legislative privilege is absolute, not qualified. Plaintiffs nevertheless treat the privilege as qualified, relying primarily on *Nashville Student Organizing*

---

[9] Sustaining a legislative-privilege objection to interrogatories asking about a legislator's motivations for introducing an ordinance.

[10] Legislative privilege extends to information exchanged between legislators and advisors involved in the legislative process. *League of United Latin Am. Citizens*, 708 F. Supp. at 878.

[11] Rejecting invocation of legislative privilege in a federal criminal prosecution, distinguishing *Tenney* on the ground that it involved a civil action brought by a private plaintiff, and explaining that legislative privilege decisions "have drawn the line at civil actions," with comity yielding only where important federal criminal enforcement interests are at stake.

[12] Recognizing an absolute legislative privilege in a civil First Amendment action, rejecting judicial inquiry into legislators' motives, and emphasizing that the privilege would be meaningless if legislators could be subjected to trial based on speculation as to intent.

11

*Committee v. Hargett*, a voting-rights case arising in a unique context where evidence of legislative intent is often unavailable outside the legislative process. 123 F. Supp. 3d 967, 970–71 (M.D. Tenn. 2015). This Court has already recognized that *Nashville SOC* does not announce a generally applicable rule governing legislative privilege in civil litigation and declined to apply its balancing framework outside that context. *Doe*, 2021 WL 5882653, at *4.

Even assuming legislative privilege is qualified in this context, the balancing factors weigh against disclosure. The relevance of individual Board members' motives is limited because the Board acts collectively through official proceedings, and this Court's inquiry "is really focused on the Board's collective motivation, as opposed to the motivation of individual Board members or the motivation of the Board majority in adopting and implementing Board Policy 4.403." (Memo. Op., DE 45 at PageID# 20; 21 n.17).[13] The Supreme Court has made clear that allegations of unconstitutional motive do not permit judicial inquiry into legislative deliberations or intent. *Tenney*, 341 U.S. at 377–78; *Bogan*, 523 U.S. at 54–55; *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 464 F. Supp. 3d 915, 923–24 (S.D. Ohio 2020). Further, compelling disclosure of legislators' motives would intrude on the legislative function and chill future deliberation.

### D. Plaintiffs Have Not Established Waiver

Legislative privilege is waived only when privileged deliberative material is disclosed in a manner that renders it publicly accessible. *League of United Latin Am. Citizens v. Abbott*, 708 F. Supp. 3d 870, 886. General public statements, political advocacy, or explanations of votes do not waive the privilege as to nonpublic deliberations or mental impressions. *Id.* Here, Plaintiffs identify only public statements by a small number of Board members that reflect general opinions

---

[13] Plaintiffs also have substantial alternative evidence, including Board minutes, recordings of public meetings, public statements, and the text of the challenged policies.

or reasoning consistent with positions expressed during public meetings.  Accordingly, there is no waiver.