# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

RACHEL ROE, et al.,

                Plaintiffs,

    v.

RUTHERFORD COUNTY BOARD OF
EDUCATION; JAMES SULLIVAN,

           Defendants.

Case No. 3:25-cv-00429

Judge Eli Richardson

Magistrate Judge Luke Evans

## MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DOCUMENTS, INTERROGATORY RESPONSES, AND DEPOSITION TESTIMONY

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................................ii

TABLE OF AUTHORITIES ........................................................................................................iii

Introduction.................................................................................................................................. 1

Background ................................................................................................................................... 2

Legal Standard ............................................................................................................................. 5

Argument ...................................................................................................................................... 6

I.      Plaintiffs Are Entitled to Discovery from the Board Members and Dr. Sullivan.................. 6

    A.      Legislative Privilege Does Not Apply to the Documents, Interrogatory Responses, or Deposition Testimony Requested by Plaintiffs............................................................................... 6

        1.      The Book Removals Are an Administrative Act, Not a Legislative Act........................ 6

        2.      Factual Information and Communications with Third Parties Are Not Protected by Legislative Privilege ........................................................................................................ 10

    B.      In the Alternative, the Legislative Privilege is Qualified and the Five-Factor Balancing Test Weighs in Favor of Disclosure.......................................................................................... 12

        1.      The Evidence Sought Is Highly Relevant to Plaintiffs' Claims ................................... 14

        2.      No Alternative Means Exist for Plaintiffs to Obtain Direct Evidence of the Board's Motivations ....................................................................................................................... 16

        3.      The Federal Interests at Stake Are Serious................................................................. 18

        4.      The Board Made the Decisions to Remove or Restrict Books ..................................... 19

        5.      There Is Minimal, If Any, Risk of Chilling Effect on the Board, Which Is Outweighed by Plaintiffs' Need for Discovery ............................................................................................ 19

    C.      The Board, Including Board Members Frances Rosales, Caleb Tidwell, and Stan Vaught, Waived Their Claim of Legislative Privilege .......................................................................... 20

    D.      If the Court Does Not Compel Discovery, Plaintiffs Seek an Attorneys' Eyes-Only Approach to Resolve the Privilege Dispute .............................................................................. 22

Conclusion ................................................................................................................................. 23

Certification of Good Faith Conference ................................................................................. 25

Certificate of Service .............................................................................................................. 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACORN (N.Y. Ass'n of Cmty. Orgs. for Reform Now) v. Cnty. of Nassau,*
2007 WL 2815810 (E.D.N.Y. Sept. 25, 2007) ...........................................................................19

*Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.,*
557 F.3d 1177 (11th Cir. 2009) ....................................................................................15, 16

*Benisek v. Lamone,*
241 F. Supp. 3d 566 (D. Md. 2017) ...............................................................................17, 19

*Bethune-Hill v. Virginia State Bd. of Elections,*
114 F. Supp. 3d 323 (E.D. Va. 2015) .............................................................................. *passim*

*Board of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,*
457 U.S. 853 (1982) .......................................................................................................18, 19

*Bogan v. Scott-Harris,*
523 U.S. 44 (1998) ................................................................................................................8

*Cano v. Davis,*
193 F. Supp. 2d 1177 (C.D. Cal. 2002) ...................................................................................16

*Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections,*
2011 WL 4837508 (N.D. Ill. Oct. 12, 2011).............................................................................6

*Davis v. Bandemer,*
478 U.S. 109 (1986)..............................................................................................................14

*Favors v. Cuomo,*
285 F.R.D. 187 (E.D.N.Y. 2012) ............................................................................................20

*Glowgower v. Bybee-Fields,*
2022 WL 4042412 (E.D. Ky. Sept. 2, 2022) ..............................................................11, 12, 14

*Harris v. Ariz. Indep. Redistricting Comm'n,*
993 F. Supp. 2d 1042 (D. Ariz. 2014) ....................................................................................16

*Hartman v. Moore,*
547 U.S. 250 (2006)..............................................................................................................14

*Haskell v. Washington Twp.,*
864 F.2d 1266 (6th Cir. 1988) ................................................................................................7

Case 3:25-cv-00429   Document 71   Filed 03/06/26   Page 3 of 31 PageID #: 777

*In re Grand Jury Investigation No. 83-2-35*,
  723 F.2d 447 (6th Cir. 1983) .................................................................................5

*Jaggers v. City of Alexandria*,
  2009 WL 233244 (6th Cir. Feb. 2, 2009) .............................................................7, 8

*Kay v. City of Rancho Palos Verdes*,
  2003 WL 25294710 (C.D. Cal. Oct. 10, 2003)..................................................10, 13

*League of Women Voters of Mich. v. Johnson*,
  2018 WL 2335805 (E.D. Mich. May 23, 2018)...................................................... *passim*

*Lilly Invs., LLC v. City of Rochester*,
  2015 WL 753491 (E.D. Mich. Feb. 23, 2015)........................................................7

*Loesel v. City of Frankenmuth*,
  2010 WL 456931 (E.D. Mich. Feb. 4, 2010)........................................................13

*Mafcote, Inc. v. Fed. Ins. Co.*,
  2010 WL 1929900 (W.D. Ky. May 12, 2010).......................................................11

*Martin v. Saginaw Cnty. Rd. Comm'n*,
  606 F. Supp. 3d 639 (E.D. Mich. 2022)...........................................................5, 6

*Mi Familia Vota v. Fontes*,
  691 F. Supp. 3d 1105 (D. Ariz. 2023) ..............................................................20

*Mich. State A. Philip Randolph Inst. v. Johnson*,
  2018 WL 1465767 (E.D. Mich. Jan. 4, 2018)....................................................10, 13

*Minarcini v. Strongsville City Sch. Dist.*,
  541 F.2d 577 (6th Cir. 1976) .......................................................................19

*Nashville Student Org. Comm. v. Hargett*,
  123 F. Supp. 3d 967 (M.D. Tenn. 2015)............................................................ *passim*

*Osborn v. Griffin*,
  2013 WL 12176851 (E.D. Ky. Sept. 17, 2013) ....................................................5

*Owen v. City of Independence, Missouri*,
  445 U.S. 622 (1980)....................................................................................20

*Parnell v. School Board of Lake County*,
  2024 WL 5508347 (N.D. Fla. Sept. 24, 2024).......................................................9

*Pearson v. City of Grand Blanc*,
  961 F.2d 1211 (6th Cir. 1992) .......................................................................7

*PEN American Center, Inc. v. Escambia Cnty. School Board,*
   787 F. Supp. 3d 1292 (N.D. Fla. 2024)........................................................................9

*Perez v. Perry,*
   2014 WL 106927 (W.D. Tex. Jan. 8, 2014) ...............................................................22, 23

*Plain Local Sch. Dist. Bd. of Educ. v. DeWine,*
   464 F. Supp. 3d 915 (S.D. Ohio 2020) ......................................................................10, 13

*S.C. State Conf. of NAACP v. McMaster,*
   584 F. Supp. 3d 152 (D.S.C. 2022), *argued sub nom, Alexander v. S.C. State*
   *Conf. of NAACP* (U.S. Oct. 11, 2023) .......................................................................14, 16, 17

*Scott v. Greenville County,*
   716 F.2d 1409 (4th Cir.1983) ...................................................................................7

*Supreme Ct. of Va. v. Consumers Union of U.S.,*
   446 U.S. 719 (1980)...................................................................................................6, 7

*Tenney v. Brandhove,*
   341 U.S. 367 (1951)..................................................................................................13

*Turtle Mountain Band of Chippewa Indians v. Jaeger,*
   344 F.R.D. 89 (D.N.D. 2022) ...................................................................................17, 20

*United States v. Gillock,*
   445 U.S. 360 (1980)..................................................................................................13, 19

*Village of Arlington Heights v. Metropolitan Housing Development Corp.,*
   429 U.S. 252 (1977)..................................................................................................14

**Statutes**

Tenn. Code. Ann. §49-6-3803 ............................................................................................2

**Other Authorities**

Fed. R. Civ. P. 26(b) ...........................................................................................................5

v

## INTRODUCTION

Pursuant to Rule 37, Plaintiffs respectfully request that the Court compel Defendants to answer Interrogatory Nos. 3, 4, 5, 8, 9, 10, 11, and 12, produce documents responsive to RFP Nos. 1, 2, 3, 4, and 6, and compel deposition testimony on basic factual questions related to the Rutherford County School Board of Education's (the "Board")[1] decision to remove 61 books (the "Subject Books") from school libraries (collectively, the "Requests").[2]

The Requests seek information that is fundamental to the parties' dispute. This discovery is likely to shed light on the Board's intent and motivation behind its decision to remove the Subject Books, which this Court has found is at the crux of this litigation. Order, ECF 45 at 20 ("[T]he proper inquiry is into the Board's motivation in order to determine whether an impermissible motive drove the Board to remove (or restrict) the books at issue.").

Defendants have taken the position that practically all information and documents reviewed or created by, or otherwise connected to the Board's decision to remove the Subject Books, is protected from discovery by the legislative privilege. As a consequence of this position, they have produced approximately 40 documents to date, none of which pertain to any book removal decisions. They further have objected and refused to respond to nearly half of Plaintiffs' interrogatories. And they have refused to schedule depositions at which Board members may be asked questions on similar topics. Defendants also have failed to produce an itemized privilege log and answer basic factual questions on the types and volume of documents and information being withheld on the grounds of legislative privilege.

---

[1] The relevant Board members are Claire Maxwell, Frances Rosales, Katie Darby, Tammy Sharp, Caleb Tidwell, Butch Vaughn, and Stan Vaught.
[2] Plaintiffs' First Set of Interrogatories and Requests for Production of Documents is attached as Exhibit A. Defendants' Responses and Objections are attached as Exhibit B.

1

Defendants bear the burden of showing the legislative privilege applies here, a burden they cannot meet for several reasons. First, the legislative privilege does not apply to administrative acts such as the application of a policy to individual instances of enforcement—which is what Defendants did in this case. Second, the privilege does not protect against discovery of factual information, publicly available materials, or third party communications, and Defendants' privilege log fails to properly describe the protected documents. Third, even if the privilege did apply facially, the legislative privilege is qualified and is overcome due to the relevance and seriousness of the federal interests at stake. Finally, at a minimum, three members of the Board have waived their claim of legislative privilege.

Plaintiffs have attempted to resolve this issue without the Court's involvement, and the parties have reached an impasse. Plaintiffs respectfully request that the Court order Defendants to produce the withheld documents and information, as well as anticipated deposition testimony.

**<u>BACKGROUND</u>**

This case involves Defendants' decision to remove 61 books from Rutherford County Schools' libraries. Compl., ECF 1 ¶ 51. In March 2022, the Tennessee State Legislature enacted the "Age Appropriate Materials Act," Tenn. Code. Ann. §49-6-3803 (the "Act"),[3] which authorizes local education agencies, such as a school board, to pass policies as to how their schools will ensure their library collections contain materials that are "age appropriate." *Id*. ¶ 12. In July 2022, the Board adopted Policy 4.403 (the "Policy"),[4] to set forth its policy regarding "age appropriate" library materials under the Act. *Id*. ¶ 15. Beginning in or around September 2024, the Board began removing books pursuant to the Policy. *Id*. ¶ 17. Over a period of approximately

---

[3] The Act has been amended by the Legislature three times since then. The enactment of the Act and its amendments are not challenged in this litigation.
[4] The Policy has been amended by the Board five times since then. The enactment of the Board and its amendments are not challenged in this litigation.

one year, the Board determined that over 140 books were out of compliance and either removed them from school libraries or restricted access. *Id*. ¶¶ 14, 44. They reached this decision even though library specialists, whom the Board had specially commissioned to review the books in question, determined that about 70% of the books did not violate the Policy. *Id*. ¶ 43.

Here, Plaintiffs challenge the Board's *application* of the Policy to the Subject Books, *not* the Policy itself. Plaintiffs allege, *inter alia*, that Defendants violated their First Amendment rights by engaging in viewpoint discrimination when removing specific books from general circulation of school libraries. As this Court has already found, to establish a First Amendment violation, Plaintiffs need information regarding that decision-making process and the motivations behind the decisions to remove the books at-issue to prove their claims. Order, ECF 45 at 21 n.17. The Board's motivation—whether the Board intentionally discriminated against other viewpoints when removing books—*is* the key focus of the case.

On August 7, 2025, Plaintiffs served Defendants with their First Set of Interrogatories, which sought general information on the decision-making process for the removal of books, the materials considered during that process, and the reasoning behind those decisions, as well as Plaintiffs' First Set of Requests for Production, which sought documents related to the same. Ex. A. On October 20, Defendants asserted broad objections based on legislative privilege to half of Plaintiffs' interrogatories and more than one-third of Plaintiffs' requests for documents, and have categorically refused to provide such information or documents. Ex. B.

On October 20, 2025, Defendants provided Plaintiffs with a privilege log that, rather than itemizing the documents that were being withheld, grouped tranches of documents into single entries, and broadly asserted they were protected from disclosure by the legislative privilege. Ex. C. For example, Defendants relayed the general description of "documents and communications

disclosing the intentions, motivations, and reasons for legislative action taken by members of the defendant Board of Education with respect to a decision concerning any book or other school library media, the enactment of any policy of the Board of Education, and *any other matter* or act occurring in the course of the legislative process." Ex. C, row 3 (emphasis added). This description—like others on the log—failed to include any date range, authors, or recipients of these various documents and communications. Defendants also included other vague entries withholding "[book] 'reviews' reviewed by" Stan Vaught and "records and information reviewed, and communications engaged in, by Board of Education member Frances Rosales, along with her motivations and reasons, for how she determined to *request* the removal of 150 books." Ex. C, rows 4-5 (emphasis added). Defendants did not explain how a *request to remove* a book—something any member of the public could do under the Policy—could constitute a legislative act.

In November, Plaintiffs raised their disagreement with Defendants' assertion of the legislative privilege protection via email during discussions of a motion to extend discovery deadlines and in later verbal conversations. In December 2025, Plaintiffs asked to meet and confer to discuss legislative privilege. On January 8, 2026, the parties met and conferred to discuss legislative privilege and other discovery disputes. Following the meet and confer, Plaintiffs continued to reach out to Defendants to attempt resolution of the dispute. Defendants refused to confirm whether any of the requested information and documents had been collected or reviewed by counsel to assess the application of legislative privilege.

In January, Plaintiffs indicated their intention to serve deposition notices on some of the Board members and Dr. Sullivan. On or around January 8, Plaintiffs confirmed that Defendants would refuse to allow deposition testimony on the decision-making process regarding the Book

4

Removals.  On February 18, Plaintiffs sent deposition notices for Dr. Sullivan, Claire Maxwell, Frances Rosales, Caleb Tidwell, Butch Vaughn, and Stan Vaught.[5].

To date, Defendants have only produced 38 unique documents—none of which speak to the Board's motivations.  Of those, Defendants produced only three emails involving the Board (two of which are near-duplicates).  Most of the information and documents provided contain no detail on the decision-making process that led to the removal and restriction of roughly 150 books from general circulation in school libraries (the "Book Removals").  Plaintiffs challenge 61 of those books in this litigation.  Compl., ECF 1 ¶ 51.

On January 21, the parties reached an impasse on this discovery dispute.  On February 12, the parties filed a Joint Motion for Discovery Conference.  ECF 61.  The Court, through Magistrate Judge Luke Evans, held a discovery conference on February 20.  The parties discussed discovery on February 23 and can confirm an impasse still exists.  Plaintiffs now seek relief from the Court through an order compelling Defendants to respond to Interrogatory Nos. 3, 4, 5, 8, 9, 10, 11, and 12; produce information and documents relevant to RFP Nos. 1, 2, 3, 4, and 6; and provide deposition testimony.  Defendants have indicated that they oppose this motion.

**LEGAL STANDARD**

Rule 26(b) allows a party to obtain discovery concerning any nonprivileged matter relevant to any party's claim or defense.  Fed. R. Civ. P. 26(b).  If a party withholds information based on privilege, the asserting party bears the burden of establishing the privilege's existence.  Fed. R. Civ. P. 26(b)(5); *In re Grand Jury Investigation No. 83-2-35*, 723 F.2d 447, 450 (6th Cir. 1983) ("The burden of establishing the existence of the privilege rests with the person asserting it."); *Osborn v. Griffin*, 2013 WL 5221663, at *2 (E.D. Ky. Sept. 17, 2013); *Martin v. Saginaw Cnty.*

---

[5] Instead of communicating with Plaintiffs, Defendants unilaterally filed an improper emergency Motion for Protective Order, which was shortly thereafter denied by the Court.  ECF 67.

5

*Rd. Comm'n*, 606 F. Supp. 3d 639, 651 (E.D. Mich. 2022) ("A party asserting a privilege" in response to a discovery request "has the burden of proving it applies.").

"For state legislators involved in federal question cases, legislative privilege protects state legislators and their legislative staff from compelled disclosure of documentary or testimonial evidence relating to actions taken within the scope of legitimate legislative activity." *League of Women Voters of Mich. v. Johnson*, 2018 WL 2335805, at*3 (E.D. Mich. May 23, 2018) ("*LOWV*"). However, the legislative privilege is "strictly construed" by this Court. *Nashville Student Org. Comm. v. Hargett*, 123 F. Supp. 3d 967, 969 (M.D. Tenn. 2015). This Court has held that the legislative privilege "must be . . . accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Id.* (quoting *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011)).

## ARGUMENT

### I. PLAINTIFFS ARE ENTITLED TO DISCOVERY FROM THE BOARD MEMBERS AND DR. SULLIVAN

The Court should compel discovery because Plaintiffs' Requests seek information that is central to the litigation and to which legislative privilege does not apply or, in the alternative, should be overcome per the five-factor balancing test and has been waived.

#### A. Legislative Privilege Does Not Apply to the Documents, Interrogatory Responses, or Deposition Testimony Requested by Plaintiffs

##### 1. The Book Removals Are an Administrative Act, Not a Legislative Act

"Documents and communications related to non-legislative tasks are not protected by the legislative privilege." *LOWV*, 2018 WL 2335805, at *6. Non-legislative tasks include applying a known policy to make a decision on the implementation of that policy. *See, e.g.*, *Supreme Ct. of*

*Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734-36 (1980) (finding that legislators were not acting in a legislative capacity when enforcing state bar code against individuals); *Jaggers v. City of Alexandria*, 2009 WL 233244, at *5 (6th Cir. Feb. 2, 2009) (considering the administrative application of existing zoning laws to a specific property); *LOWV*, 2018 WL 2335805, at *6 ("Documents and communications created after the date of enactment" are not covered by legislative privilege); *Lilly Inv., LLC v. City of Rochester*, 2015 WL 753491, at *4-5 (E.D. Mich. Feb. 23, 2015) (finding that the application of zoning rules to grant or deny a permit was administrative); *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015) ("The privilege only protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment.").

The Sixth Circuit draws the line as follows: when local government officials "do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement" of a policy, that step is an administrative act. *Haskell v. Washington Twp.*, 864 F.2d 1266, 1278 (6th Cir. 1988) (quoting *Scott v. Greenville County,* 716 F.2d 1409, 1423 (4th Cir.1983)), *abrogated on other grounds by Vaduva v. City of Xenia*, 780 F. App'x 331, 336 (6th Cir. 2019); *see also Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1220-21 (6th Cir. 1992) (referencing the same distinction between "prospective, legislative-type rules," which are legislative, and "enforcement," which is administrative).

Here, the Board plainly took an administrative step when it applied the Policy to the Subject Books. The Board evaluated whether individual books qualified as "Age Appropriate" under the existing Policy. The court's decision in *Jaggers* is instructive. In that case, the city council rejected a land-use plan due to pre-existing zoning rules. 2009 WL 233244, at *1. The court determined the act was not legislative in form because there was no evidence "establishing that the

7

procedures set forth in [the city's zoning ordinance] are the procedures Council Members use to invoke their legislative, rather than their managerial or administrative powers." *Id.* at *5. Similarly here, the Board considered, and frequently rejected, the inclusion of specific books in school libraries based on the criteria set forth in the Policy. The Board considered each book on an individual basis, as well as book reviews and book-specific recommendations, when applying the pre-existing Policy to ban that particular book. Plaintiffs seek information on that implementation decision, i.e. how and why the Board decides that the Policy should be enforced against certain books and not others.

The Board's own conduct shows that the Book Removals are administrative, not legislative, by indicating that their Book Removal decisions were enforcements of the Act. For example, in response to Interrogatory No. 4, where Plaintiffs ask for the reasons for the removal of each book, Defendants stated, "[p]lease refer to the Age Appropriate Materials Act, which is the basis for the decisions challenged by Plaintiffs in this case." Ex. B at 8. This response implies that the Board is carrying out enforcement of the pre-existing policy when it removes a specific book. This post-enactment, enforcement step is administrative.

Defendants also bear the burden of showing that the discovery sought is legislative in *both* form and substance. *Bogan v. Scott-Harris,* 523 U.S. 44, 49, 54 (1998) (form and substance must be considered to determine whether an act falls within "the sphere of legitimate legislative activity"). Acts that are legislative in *form* are "integral steps in the legislative process." *Id.* at 55; *Jaggers*, 2009 WL 233244, at *5. Acts that are legislative in *substance* reflect general policymaking decisions like introducing a budget, signing an ordinance into law, and voting for an ordinance. *Id.* By contrast here, the Board's decision-making process regarding the Subject Books reflects individualized determinations of whether the books comply with the Policy.

8

Defendants assert that any discretionary decision taken by a legislator is protected by the legislative privilege, relying heavily on the unreported, out-of-circuit decision in *Parnell*. *Parnell v. Sch. Bd. of Lake Cnty.*, 2024 WL 5508347 (N.D. Fla. Sept. 24, 2024). Yet, *Parnell* is both distinguishable from these circumstances and challenged within its own court. First, the school board in *Parnell* did not apply a policy like the Board here. The board in *Parnell* had no pre-existing policy to implement, but rather banned books based on ad-hoc determinations. *Id.* at *2. By contrast here, the Board is enforcing the Act and the Policy. The step that is at issue in this case, unlike in *Parnell*, is the *enforcement* of the Policy as it applies to individual books. Second, the single federal case citing to *Parnell* agrees with this distinction and finds that school board book removals are "functionally an administrative act." *PEN American Center, Inc. v. Escambia Cnty. Sch. Bd.*, 787 F. Supp. 3d 1292, 1297-98 (N.D. Fla. 2024) (noting the functional difference between school board's adoption of a policy detailing what content is generally prohibited in school library books, a legislative act, and the board's determination that a specific book must be removed from school libraries because it contains such content, an administrative decision).

Finally, regardless of the applicability of the legislative privilege to the discovery sought from the Board, Defendants cannot use legislative privilege as a basis to withhold information from Dr. Sullivan. As the Director of Rutherford County Schools, Dr. Sullivan serves no legislative function and thus cannot be protected by legislative privilege. Dr. Sullivan is not a member of the Board. He is a school administrator responsible for carrying out Board policy *after* it is established, not to participate as a legislator. At the minimum, the Court should find that Dr. Sullivan is not entitled to assert the legislative privilege in any regard.

2. <u>Factual Information and Communications with Third Parties Are Not</u>
<u>Protected by Legislative Privilege</u>

Another threshold issue blocks application of the legislative privilege to the Requests. The privilege does not protect against discovery of factual information, publicly available materials, or third-party communications. *See, e.g.*, *Bethune-Hill*, 114 F. Supp. 3d at 343 ("All documents or communications reflecting strictly factual information—regardless of source—are to be produced."); *LOWV*, 2018 WL 2335805, *6 ("Fact-based documents and communications are not protected by the legislative privilege."); *Kay v. City of Rancho Palos Verdes*, 2003 WL 25294710, at *16 (C.D. Cal. Oct. 10, 2003) ("Where deliberative matters are intermingled with purely factual matters, the latter must be disclosed if they are severable."); *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 464 F. Supp. 3d 915, 921 (S.D. Ohio 2020) ("[N]ot every action or communication by a legislator is covered by the legislative privilege, and courts have declined to apply the privilege to communications between legislators and third parties, such as lobbyists or constituents."); *Mich. State A. Philip Randolph Inst. v Johnson*, 2018 WL 1465767, at *7 ("[C]ommunications between legislators or their staff and any third party are not protected by the legislative privilege.").

There is no basis to assert that all Board documents and information relating to the implementation of the Policy falls within the scope of the legislative privilege simply by virtue of the information being reviewed by the Board. Plaintiffs seek, and Defendants inappropriately refuse to produce, the following factual information or communications with third parties that should not be withheld on the basis of privilege:

- Interrogatory No. 3 (in part): Identify all book review sources considered by Defendants;

- Interrogatory No. 4 (in part): Identify when each book identified was removed from the library collection, who removed the book, where the removed books were discarded or otherwise stored following their removal;

10

- Interrogatory No. 9: Identify the "reviews" Stan Vaught reviewed, as alleged in Paragraph 28 of the Complaint, including the name of the reviewer and the source Mr. Vaught used to access the "reviews."

- Interrogatory No. 10: Identify with specificity what law Defendants are referring to as "applicable law" in Paragraphs 14, 30, 31, 43, 44, and 53 of the Answer.

- Interrogatory No. 11 (in part, modified for brevity): Identify whether Ms. Rosales read each book.

- Interrogatory No. 12 (in part, modified for brevity): For each member of the Board, identify which books each member has read including whether the book was read in whole, or if any member read only passages of such book, identify the passages read by such member.

- Requests for Production seeking communications, which may include third party communications, related to the discussion or evaluation of the removed books, their authors, book reviews, and requests for the removal of books (RFP Nos. 1, 2, 3, 4)

- Request for Production No. 6 (in part, modified for brevity): Produce communications related to Defendants' library collection curation policies.

Furthermore, Defendants' privilege log, which sets forth a blanket assertion of the legislative privilege regardless of the nature or content of the information, is insufficient to properly assert the privilege. "Generally, when a privilege is asserted, counsel is obligated to create and produce a privilege log laying out the information required under Rule 26." *Glowgower v. Bybee-Fields*, 2022 WL 4042412, at \*8 (E.D. Ky. Sept. 2, 2022) (citing *Mafcote, Inc. v. Federal Ins. Co.*, 2010 WL 1929900, at \*5 (W.D. Ky. May 12, 2010)). To justify a claim of privilege, "a privilege log must contain sufficient factual content to allow the court to reach the conclusion that each element of that privilege is fulfilled." *Id.* (quoting *Mafcote, Inc.*, 2010 WL 1929900, at \*5). "Failure to produce a privilege log is fatal to a party's assertion of privilege." *Id.* (ordering counsel to provide a sufficiently detailed privilege log).

Defendants generally withhold all discovery on "any policy of the Board." Ex. C, entry 3. Factual materials, including online book reviews considered by the Board, are also being withheld

11

due to privilege. Ex. C, entries 4-5. Indeed, Defendants withhold information related to a public process wherein members of the public can request review of specific books for removal. Members of the public may complete a form, the "Request for Reconsideration of Library Materials,"[6] and the Board will reviews those requests. According to Defendants' privilege log, Ms. Rosales participated in that process, personally requesting review of numerous books in the same way members of the public may request review. Defendants never explained how a *request to remove* a book—something any member of the public could do under the Policy—could constitute a legislative act. Defendants, however, now claim legislative privilege over information related to Ms. Rosales' use of that public process simply by virtue of her position on the Board. Ex. C, entry 5. Defendants may not use Ms. Rosales' title to withhold information connected to a process that anyone may engage in.

Despite repeated requests from Plaintiffs' counsel, Defendants have failed to produce an adequate privilege log and should not be allowed to hide otherwise discoverable information within a generic log. Accordingly, the Court should not permit Defendants to apply the legislative privilege to information that fails to meet threshold requirements for protection because (1) it does not apply to administrative acts, (2) it does not apply to factual or third-party materials, and (3) the privilege log is insufficient.

**B.** **In the Alternative, the Legislative Privilege is Qualified and the Five-Factor Balancing Test Weighs in Favor of Disclosure**

Even if the Court finds that legislative privilege applies to Defendants, numerous cases in this district and circuit agree that it is a qualified privilege that can be overcome. *See, e.g.*, *Nashville Student Org. Comm.*, 123 F. Supp. 3d at 969; *Glowgower*, 2022 WL 4042412, at *9

---

[6] *Request for Reconsideration of Library Materials*, Rutherford Cnty. Bd. of Educ. (Aug. 19, 2022) https://4.files.edl.io/59e1/11/13/24/144259-ecf08d36-012e-4644-9b98-3055ca6486bf.pdf.

("[T]he legislative *privilege* afforded to state legislators is qualified.") (emphasis in original); *LOWV*, 2018 WL 2335805, at *3-4 ("State legislators are afforded a qualified legislative privilege against being required to provide records or testimony concerning legislative activity . . . . Federal courts have applied a qualified legislative privilege in cases involving constitutional challenges to state legislation." (citations omitted)).

Defendants erroneously assert that the legislative privilege is absolute in civil suits regarding private rights. ECF 65 at 13 (citing *United States v. Gillock*, 445 U.S. 360, 371-73 (1980), and *Tenney v. Brandhove*, 341 U.S. 367, 377-78 (1951)). But courts in this circuit rejected Defendants' reading of *Gillock* and *Tenney*. *See Mich. State A. Philip Randolph Inst.*, 2018 WL 1465767, at *54 (explaining that "*Gillock* is suggestive of a qualified legislative privilege that can be overcome where important federal interests are at stake" and that "*Tenney* dealt primarily with legislative immunity from suit, not a legislative evidentiary privilege"); *see also Loesel v. City of Frankenmuth*, 2010 WL 456931, at *5-6 (E.D. Mich. Feb. 4, 2010) (rejecting defendant's argument that "the [Supreme] Court's analysis [in *Gillock*] is not applicable in a civil context"; distinguishing *Tenney* because "the Court there addressed immunity from suit, not an evidentiary privilege that would prevent a state legislator from testifying at a deposition or trial"; and denying defendant's invocation of the legislative privilege); *Plain Local Sch. Dist. Bd. of Educ.*, 464 F. Supp. 3d at 920 ("The Supreme Court has . . . rejected the notion that the common law immunity of state legislators gives rise to a general evidentiary privilege. The legislative privilege is qualified, not absolute." (citation omitted)). Accordingly, the controlling rule in this circuit and elsewhere is that the legislative privilege is not absolute. *See id.*; *see also Kay*, 2003 WL 25294710, at *14 ("[T]he cases applying a qualified privilege represent the better, and controlling, legal rule.").

In considering whether the qualified legislative privilege should be upheld, courts look to a five-factor balancing test: "(1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the 'seriousness' of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Nashville Student Org. Comm.*, 123 F. Supp. 3d at 970; *see also Glowgower*, 2022 WL 4042412, at *9 ("Courts assess whether the qualified legislative privilege applies using a five-factor balancing test."). The factors weigh in favor of disclosure.

### 1. The Evidence Sought Is Highly Relevant to Plaintiffs' Claims

Motivation is a central element of Plaintiffs' First Amendment claims. *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (holding that retaliatory animus is a required element of a cognizable First Amendment claim); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266, 268 (1977) (holding that legislative history of a decision "may be highly relevant" to determine whether an "invidious discriminatory purpose was a motivating factor" for the decision); *Davis v. Bandemer*, 478 U.S. 109, 127 (1986) (requiring proof of discriminatory intent in gerrymandering cases).

Finding whether the Board intentionally discriminated against viewpoints with respect to the Book Removals necessitates discovery into the Board's decision-making process. *See, e.g.*, *S.C. State Conf. of NAACP v. McMaster*, 584 F. Supp. 3d 152, 163 (D.S.C. 2022) (finding the evidence sought was "highly relevant to the intentional discrimination claims at the heart of the complaint, because the Legislature's 'decision making process itself is the case.'"), *argued sub nom.*, *Alexander v. S.C. State Conf. of NAACP* (U.S. Oct. 11, 2023) (No. 22-807). For such claims,

14

"proof of a legislative body's discriminatory intent is relevant and extremely important as direct evidence." *See Bethune-Hill*, 114 F. Supp. 3d at 339.

In its denial of Plaintiffs' Motion for Preliminary Injunction, the Court said as much—that the motivations of the Board are central to this dispute and should be explored through discovery. Order, ECF 45 at 20, 21 n.17. While considering leading cases on the constitutionality of school board removals of books, the Court noted that the Sixth Circuit focuses on the "explanation of the Board's action" in its analysis of the constitutionality of the book removals. *Id.* at 19. Plaintiffs now seek discovery that is aligned with the "approach already adopted . . . by the Court, which focuses on the motivation of the Board." *Id.* Not only did this Court find that an "inquiry into school officials' motivations is appropriate in cases like the instant one[,]" *id*. at 15, the Court emphasized that "the *proper* inquiry is into the Board's motivation in order to determine whether an impermissible motive drove the Board to remove or restrict the books at issue." *Id.* at 20 (emphasis added). Defendants' refusal to produce this information—essentially leaving Plaintiffs without discovery with respect to the Board's motivations and decision-making process regarding the Subject Books—would severely prejudice Plaintiffs' ability to support its claims.

Finally, Defendants argue that discovery from the individual Board members is not relevant because the Board acts collectively. This stance is illogical and—again—inconsistent with the Court's prior ruling. To prove its claims, Plaintiffs need the opportunity to elicit information and testimony from individual Board members in order to understand the Board's motivations and decision-making process. While discussing leading cases on the issue of book removals from school libraries, the Court acknowledged it must examine the motivations of and comments made by individual board members when evaluating the constitutionality of decisions made by school boards as a collective. *See* Order, ECF 45 at 20 n.17 (citing *ACLU of Fla., Inc. v. Miami-Dade*

15

*Cnty. Sch. Bd.*, 557 F.3d 1177, 1207 (11th Cir. 2009)).[7] Logically, there is no other method to collect this information. The Court agreed that "an inquiry into the Board's motivation *necessarily* involves an examination of the comments and motivations of individual Board members." Order, ECF 45 at 21 n.17 (emphasis added). The first factor weighs in favor of disclosure.

2. <u>No Alternative Means Exist for Plaintiffs to Obtain Direct Evidence of the Board's Motivations</u>

Ultimately, there is no alternative way for Plaintiffs to discover this information that goes to the heart of the claims in this case. The Requests and related deposition testimony sought by Plaintiffs seek the only *direct* evidence available of the Board's motivations and decision-making process behind the Book Removals. The fact that other information may *indirectly* reflect motive, or may reflect *public-facing* statements about motive, does not weigh in favor of applying the privilege. "Motive is often most easily discovered by examining the unguarded acts and statements of those who would otherwise attempt to conceal evidence of discriminatory intent." *Harris v. Ariz. Indep. Redistricting Comm'n*, 993 F. Supp. 2d 1042, 1071 (D. Ariz. 2014) (quoting *Cano v. Davis*, 193 F. Supp. 2d 1177, 1181–82 (C.D. Cal. 2002)); *see also S.C. State Conf. of NAACP*, 584 F. Supp. 3d at 164 (acknowledging that no other evidence "would be as probative of an unlawful legislative motive as potential direct or circumstantial evidence which could be obtained through the disclosure of the requested legislative materials" and deposing the legislators); *LOWV*, 2018 WL 2335805, at *5 ("Given that intent is a critical element of Plaintiffs' claims, the second factor weighs in favor of disclosure."). "In general, 'the availability of alternate evidence will only supplement—not supplant—the evidence sought by the Plaintiffs.'" *Turtle Mountain Band of*

---

[7] Defendants' argument to the contrary is internally inconsistent. They claim (a) individual Board members are exempt from discovery because only the Board as a whole is party to the litigation, but at the same time (b) the Board as an entity cannot speak to the reasoning behind its own decisions. The Board's actions reflect the decisions and motivations of its members.

*Chippewa Indians v. Jaeger*, 344 F.R.D. 89, 101 (D.N.D. 2022) (quoting *Bethune-Hill*, 114 F. Supp. 3d at 341) (finding the party's need for the evidence outweighed the interest in non-disclosure); *see also S.C. State Conf. of NAACP*, 584 F. Supp. 3d at 164 (relying on circumstantial evidence "is not a substitute for the ability to depose a witness and obtain *direct* evidence of motive and intent" (citation omitted)).

None of the discovery produced by Defendants to date speaks to the Board's motivations. The discovery sought here is likely the only way to obtain direct, candid evidence of discriminatory motivation.

For these reasons, the Court should reject Defendants' arguments that recordings of public meetings, Board minutes, and other public statements are sufficient evidence to show the Board's reasoning behind the Book Removals. This is unsatisfactory, for multiple reasons. First, the availability of these extremely limited and often non-responsive recordings "does not render evidence regarding the Legislators' direct deliberations irrelevant 'given the practical reality that officials seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate' against a particular group." *LOWV*, 2018 WL 2335805, at \*5 (quoting *Bethune-Hill*, 114 F. Supp. 3d at 341); *see also Nashville Student Org. Comm.*, 123 F. Supp. 3d at 970-71; *Benisek v. Lamone*, 241 F. Supp. 3d 566, 576 (D. Md. 2017) (finding that public legislative records and circumstantial evidence are "not a substitute for the ability to depose a witness and obtain *direct* evidence of motive and intent"). Plaintiffs are still entitled to direct evidence of Defendants' motivations. Second, for at least some books removed from school libraries, Defendants made the determinations *without* any public meeting or vote, showing that the public session recordings are inadequate to satisfy Plaintiffs' Requests, thus for many Book Removals there is no other available evidence of motivation. Compl., ECF 1 ¶ 14. Third, these

videos do not identify or provide the materials considered by the Board in its evaluations of individual books, nor do they speak to key events, such as the Board's decision to disregard recommendations from library specialists to retain books more than 70% of the time. *Id*. ¶ 43. Plaintiffs need discovery on these decisions to understand what materials were considered when the Board reached its decision and whether specialist recommendations were ignored due to viewpoint discrimination or otherwise.

Accordingly, the second factor weighs in favor of disclosure.

3. The Federal Interests at Stake Are Serious

A qualified legislative privilege also "can be overcome where important federal interests are at stake." *LOWV*, 2018 WL 2335805, at *3.

The Complaint details Plaintiffs' allegations of unconstitutional viewpoint discrimination in Defendants' Book Removals in violation of the First Amendment. Plaintiffs allege, *inter alia*, that Defendants' decision to remove books from school libraries was motivated by their desire to suppress ideas with which Defendants disagreed, either politically or ideologically and to prescribe their partisan intentions on the information available to students. Compl., ECF 1 ¶¶ 58-64, 68-69. Many of the Subject Books have been circulated in school libraries for years, included on classroom curricula, and published specifically for a young adult audience. *Id.* ¶ 46. For example, Plaintiffs challenge the Board's removal of *Wicked: The Life and Times of the Wicked Witch of the West* by Gregory Maguire, a retelling of the life of the Wicked Witch of the West from the famous film *The Wizard of Oz* and a story that since publication has been adapted into a record-breaking Broadway musical and Academy Award nominated film. *Id.* ¶ 52 at 27. The decisions to remove these books pose serious First Amendment issues. *See, e.g.*, *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) ("[T]he right to receive ideas is a necessary

predicate to the recipient's meaningful exercise of his own rights of speech, press, and political freedom."); *Minarcini v. Strongsville City Sch. Dist.*, 541 F.2d 577, 583 (6th Cir. 1976) ("[T]his Court has referred to a First Amendment right to 'receive information and ideas,' and that freedom of speech necessarily protects the right to receive." (citation omitted)).

The serious federal concern of whether state actors violated Plaintiffs' rights under the First Amendment overcomes the qualified legislative privilege, especially when combined with the relevance of the Requests to the constitutional issue. The third factor weighs in favor of disclosure.

### 4. The Board Made the Decisions to Remove or Restrict Books

The fourth factor—the role of the government in the litigation—also warrants disclosure. The Board is a party to the action. Its actions are directly at issue in Plaintiffs' claims. The Board is responsible for interpreting the Policy and determining whether individual books should be included in school library collections, which is the administrative process at the center of this litigation. *LOWV*, 2018 WL 2335805, *5 (finding that the fourth factor weighed in favor of disclosure where the government is a direct participant in the action).

### 5. There Is Minimal, If Any, Risk of Chilling Effect on the Board, Which Is Outweighed by Plaintiffs' Need for Discovery

Any potential chilling effect on the Board is outweighed by the other factors here. Courts recognize that even if discovery into the legislative process has a chilling effect, disclosure is still warranted where "unconstitutional intent may have infected the legislative process." *LOWV*, 2018 WL 2335805, at *5-6; *Benisek*, 241 F. Supp. 3d at 576; *see also Gillock*, 445 U.S. at 373 ("recogniz[ing] that denial of a privilege to a state legislator may have some minimal impact on the exercise of his legislative functions," but concluding that "comity yields" when "important federal interests are at stake"); *ACORN (N.Y. Ass'n of Cmty. Orgs. for Reform Now) v. Cnty. of Nassau*, 2007 WL 2815810, at *2 (E.D.N.Y. Sept. 25, 2007) ("[T]he court must balance the extent

19

to which the production of the disputed evidence would have a chilling effect on [a municipal board] against those factors favoring disclosure."). Here, the facts suggest that unconstitutional intent infected the Book Removal process. Indeed, that is what Plaintiffs alleged and what the Court said Plaintiffs needed discovery on to prove their case. Order, ECF 45 at 20. Further, the chilling effect is minimal here. Plaintiffs do not seek to impose liability against individual members of the Board, and the U.S. Supreme Court has recognized that the chilling effect "is significantly reduced, if not eliminated . . . when the threat of personal liability is removed." *Owen v. City of Independence*, 445 U.S. 622, 656 (1980).

Therefore, balancing the five-factor test weighs in favor of disclosure: (1) the Board motivations are highly relevant to the central issues in the litigation; (2) direct evidence of intent is only available through this discovery; (3) the constitutional rights at stake are serious; (4) Defendants played the key role in removing these books; and (5) the chilling effect is minimal and outweighed by other factors.

### C. The Board, Including Board Members Frances Rosales, Caleb Tidwell, and Stan Vaught, Waived Their Claim of Legislative Privilege

Sharing relevant documents or information that might otherwise have been protected by the legislative privilege with third parties waives the privilege. *LOWV*, 2018 WL 2335805, \*6. Parties "holding [legislative] privilege" can waive privilege by "shar[ing] their communications with an outsider." *Turtle Mountain Band of Chippewa Indians*, 344 F.R.D. at 102 (cleaned up). The waiver "need not be explicit and unequivocal," *id.* (quoting *Favors v. Cuomo*, 285 F.R.D. 187, 211 (E.D.N.Y. 2012)), and privilege regarding motivations can be waived in part by individuals "putting their motives at issue." *Mi Familia Vota v. Fontes*, 691 F. Supp. 3d 1105, 1110 (D. Ariz. 2023).

20

Board members Frances Rosales, Caleb Tidwell, and Stan Vaught waived their claims of legislative privilege. This includes communications with third parties which do not fall within the privilege, yet Defendants included in their privilege log nonetheless. Ex. C, entries 4-5. Additionally, Ms. Rosales, Mr. Tidwell, and Mr. Vaught spoke to the press about the Board's book removal decisions. *See, e.g.*, Kenley Hargett, *Librarians with Rutherford County Schools Set to Review More than 150 Potentially Explicit Books*, WKRN (Nov. 15, 2024), https://www.wkrn.com/news/local-news/librarians-rcs-title-review/ (quoting Rosales, who said, "I took it upon myself to say, 'Well, if there's pornography in our schools, what books could potentially be perceived as sexually explicit under the new statute of obscenity?'"); Stacey Cameron, *Rutherford County Faces Heated Debate Over Book Bans in School as 150 More Titles Are Pulled From Library Shelves*, WSMV (Nov. 13, 2024), https://www.wsmv.com/2024/11/14/rutherford-county-faces-heated-debate-over-book-bans-school-150-more-titles-are-pulled-library-shelves/ (quoting Tidwell, who said, "It is offensive to suggest keeping sexually explicit books in school libraries has no damaging effect on minors and that these fictional books have educational value that supersedes its sexual exposure," and Vaught, who said "It almost reminds me of 1930s Germany just a little bit, where if we pull them out of our libraries, where are we going to pull them out of next?"). Indeed, Ms. Rosales[8] and Mr. Tidwell[9] repeatedly posted on Facebook with the express purpose of explaining the rationale for their choices. Ex. D (collecting various social media posts).

---

[8] *See, e.g.*, Frances Rosales, Facebook (Nov. 19, 2024), https://www.facebook.com/FrancesRosalesRCSchoolBoard/posts/pfbid0hgwrQzgyDcUiGpuNxHE6dkRt3JvAf7W N9FzuS7vn9WnS9fqAQAfHQu9xJUHEPPc1l?rdid=xopTZQ5evDsBWhY2# ("It is ironic that Mr. Tidwell now questions my process, including whether I reviewed the books or confirmed the number of copies in circulation, when he himself failed to follow a clear process for his challenges on September 19 . . . . Given his reliance on booklooks.org for evidence, it is puzzling that he now questions my decision to use the same source to support my submissions.").

[9] *See, e.g.*, Caleb Tidwell, Facebook (Sept. 30, 2024), https://www.facebook.com/CalebTidwellRCS/posts/pfbid02rba1wPxgfPqzximN2unRymMz3rNMmLdATeQNvgtD eQ7KgbDyDoajQBRqYap1maul?rdid=o37318RIYiCg8Pnw# ("The Work Session (Sept 17th) portion around this

21

Allowing Defendants to invoke legislative privilege despite public comments about their motivations permits them to use the privilege as both a sword and a shield—selectively revealing some details while hiding others. Such public comments waive their claim of legislative privilege.

**D.      If the Court Does Not Compel Discovery, Plaintiffs Seek an Attorneys' Eyes-Only Approach to Resolve the Privilege Dispute**

While this circuit strongly favors disclosure under these circumstances, if the Court does not compel disclosure outright, Plaintiffs respectfully request that the Court order Defendants to comply with the requested discovery on an attorneys' eyes-only basis, so that the parties can thereafter meet and confer about whether the privilege applies to specific documents, information, and testimony, and if needed return to this Court for an in-camera review of the affected discovery and ruling on whether the privilege applies, consistent with the approach taken by this Court in *Nashville Student Org. Comm.*, 123 F. Supp. 3d at 971-72 (allowing plaintiffs to proceed with depositions and document discovery, with legislators directed to answer questions posed and produce documents subject to claim of privilege on an attorneys eyes' only basis, to be followed by any disputes being put before the court via filing transcripts or documents under seal for in camera review, until court resolved privilege issue with regard to its application to specific materials or testimony, on which it reserved decision); *see also Perez v. Perry*, 2014 WL 106927,

---

topic addressed items like the TN law, board policy, current screening process by the librarians, a little history on court cases, and general discussion about what 'line' is.

The Board meeting (Sept 19th), unsurprisingly, garnered more attention as discussion becomes a voting item. There was standing room only and multiple speakers. Individuals in opposition of removal of sexually explicit content wore purple while individuals in favor of removal of sexually explicit content wore white apparel (about 70%)."); Caleb Tidwell RCS, Facebook (April 7, 2024), https://www.facebook.com/CalebTidwellRCS/posts/pfbid0CiXjCYanPw7p5u4kAiwi4sHUGEFqs7UkNNgGSUYjb 3hEaavd7d4ENez8jJtQ14QXl?rdid=Ar7otkKDGpubOZzv# (in a post discussing the book removals, stating "Obeying the Law is being Transparent. My school board emails are public record, including my emails to the Director on this subject. The Director's emails are public record as well. He emailed every principal, several staff, and board members about the results of following TN Law and RCS Board Policy, as policy directs. If one was trying to hide something, then why would they put it in writing subject to Open Request?").

22

at *2-3 (W.D. Tex. Jan. 8, 2014) (allowing the depositions of legislators, legislative aides, and legislative staff to proceed under seal, with portions of the transcripts submitted for in camera review). Proceeding with discovery in this way is a minor inconvenience to Defendants compared to the significant harm against Plaintiffs if their First Amendment rights have been violated.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel Defendants to provide information and documents responsive to the Requests, specifically Interrogatory Nos. 3, 4, 5, 8, 9, 10, 11, and 12, and RFP Nos. 1, 2, 3, 4, and 6, and to provide deposition testimony.

/s/ Theresa House
ARNOLD & PORTER KAYE SCHOLER LLP

Theresa House (admitted *pro hac vice*)
Dori Ann Hanswirth (admitted *pro hac vice*)
Anand Agneshwar (admitted *pro hac vice*)
Leah Novak (admitted *pro hac vice)*
Zoe Staum (admitted *pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-7062
theresa.house@arnoldporter.com
anand.agneshwar@arnoldporter.com
dori.hanswirth@arnoldporter.com
leah.novak@arnoldporter.com
zoe.staum@arnoldporter.com

Zee Scout, BPR # 042637
Lucas Cameron Vaughn, BPR # 036284
American Civil Liberties Union Foundation of
Tennessee
P.O. Box 120160
(615) 320-7142
zscout@aclu-tn.org
lucas@aclu-tn.org

Kerry Knox, BPR # 23302
117 S. Academy Street

23

Murfreesboro, TN 37130
(615) 896-1000
kek@castelliknox.com

*Counsel for Plaintiffs*

24

**<u>CERTIFICATION OF GOOD FAITH CONFERENCE</u>**

Pursuant to Local Rules 7.01(a)(1) and 37.01(a), counsel for the parties conferred in good faith in an effort to resolve by agreement the issues raised in this motion but were unable to reach agreement.

<u>/s/ Zoe Staum</u>

25

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was sent to all counsel of record via the District Court's electronic filing system on March 6, 2026.

/s/ Zoe Staum