| | |
|---|---|
| RACHEL ROE et al.,<br>        Plaintiffs,<br><br>v.<br><br>RUTHERFORD COUNTY BOARD OF<br>EDUCATION et al.,<br>        Defendants. | Case No. 3:25-cv-00429<br><br>Judge Eli J. Richardson<br>Magistrate Judge Luke A. Evans |

## MEMORANDUM ORDER

Pending before the Court is Plaintiffs' motion to compel documents, interrogatory responses, and deposition testimony under Rule 37(a) of the Federal Rules of Civil Procedure. (Doc. No. 71.) Defendants responded (Doc. No. 79), and Plaintiffs replied (Doc. No. 85). This matter is ripe for decision. For the foregoing reasons, Plaintiffs' motion is GRANTED IN PART.

### I.      Background

Plaintiffs—four current students in Rutherford County schools and a nonprofit membership organization of writers—have sued the Rutherford County Board of Education and its Director for violating their First Amendment rights through the removal of 61 books from Rutherford County school libraries. The book removals are occurring under the Age-Appropriate Materials Act of 2022 (the Act), Tenn. Code Ann. §§ 49-6-3801 to § 49-6-3803, and Rutherford County Board of Education Policy 4.403 (the Policy) (Doc. No. 1-1). The Act requires local boards of education to adopt policies for developing and reviewing school library collections, consistent with the general mandate that "[m]aterials in a library collection must be suitable for the age and maturity levels of the students who may access the materials and must be suitable for, and consistent with, the educational mission of the school." Tenn. Code Ann. § 49-6-3803(a). The Policy sets forth a

process through which materials in the Rutherford County school library collection that meet certain obscenity criteria defined in Tenn. Code Ann. § 39-17-901 "shall be immediately removed from all libraries within the school district and then reviewed for final decision by the Board." (Doc. No. 1-1 at 1.)

The complaint contains two claims under 42 U.S.C. § 1983. In the first claim, the student plaintiffs accuse defendants of violating their First Amendment right to receive information by removing the books "in a narrowly partisan or political manner, or because Defendants disagree with the ideas or views contained in those books." (Doc. No. 1 at 33.) In the second claim, plaintiff PEN American Center, Inc. accuses defendants of violating its members' First Amendment freedom of expression by interfering "with author members' ability to share their constitutionally protected books free from viewpoint-based discrimination." (*Id.* at 34.) Plaintiffs do not challenge the constitutionality of the Act or of the Policy. Rather, plaintiffs allege that defendants applied the Policy to the removed books improperly "by engaging in viewpoint discrimination when removing specific books from general circulation of school libraries." (Doc. No. 71 at 8.)

The pending motion stems from plaintiffs' attempts at discovery regarding how defendants decided to remove the 61 books in question from school libraries. Plaintiffs served defendants with 14 interrogatories and 14 requests for production (Doc. No. 71-1) seeking information including whether individual school board members read the books in question; any reliance on third-party reviews or recommendations about the books in question; and "the process and criteria used by the Defendants to evaluate whether books should be removed from Defendants' school library collection, including the applicable policies, protocols, procedures, or guidelines, and all individuals involved in determining whether books should be removed, in effect from July 1, 2023, to present." (Doc. No. 71-1 at 7.) Many of defendants' responses (Doc. No. 71-2) included an

2

objection that, to the extent that the discovery request sought to uncover the private motivation or thought process of individual school board members, that information was protected from disclosure by legislative privilege.[1] In support of the assertion of legislative privilege,[2] defendants cited an opinion from the Northern District of Florida holding that legislative privilege shielded individual school board members from depositions in a case challenging book removals. *See generally Parnell v. Sch. Bd. of Lake Cnty.*, No. 4:23-CV-414, 2024 WL 5508347 (N.D. Fla. Sept. 24, 2024), *final judgment entered*, 2025 WL 2959779 (N.D. Fla. Sept. 30, 2025), *appeal docketed*, No. 25-13485 (11th Cir. Oct. 7, 2025). The assertion of legislative privilege also affects whether plaintiffs can compel depositions of the school board Director, who is a named party, and of non-party individual school board members that they noticed under Rule 30(b). (Doc. No. 64-1.)

## II.      Legal Standard

"[T]he scope of discovery is within the sound discretion of the trial court[.]" *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (first alteration in original) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). Generally, Federal Rule of Civil Procedure 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Relevant evidence

---

[1]      Defendants also provided a privilege log that did not itemize documents but instead identified three categories of documents protected from disclosure by legislative privilege. (Doc. No. 71-3.) Plaintiffs contend that the privilege log is deficient, but the Court need not address that issue here.

[2]      Counsel for defendants have asserted legislative privilege on behalf of Defendant Sullivan and the individual board members. *See Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:20-CV-01023, 2021 WL 5882653, at *1 (M.D. Tenn. Dec. 13, 2021) ("Given that there is no controlling precedent on the question of who may assert a legislative privilege, the Court elects to follow those courts that permitted the legislative body to assert the privilege.").

in this context is that which "'has any tendency to make a fact more or less probable than it would be without the evidence,' if 'the fact is of consequence in determining the action.'" *Grae v. Corr. Corp. of Am.*, 326 F.R.D. 482, 485 (M.D. Tenn. 2018) (quoting Fed. R. Evid. 401).

The party moving to compel discovery bears the initial burden of proving the relevance of the information sought. *See Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment ("A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them."). A motion to compel discovery may be filed in a number of circumstances, including when "a party fails to answer an interrogatory submitted under Rule 33[,]" or "produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). "[A]n evasive or incomplete disclosure, answer, or response" is considered "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "The court will only grant [a motion to compel], however, if the movant actually has a right to the discovery requested." *Grae*, 326 F.R.D. at 485.

There is no order to compel deposition testimony under the Federal Rules of Civil Procedure. The Court may compel a deponent to answer a question asked under Rule 30 or 31. Fed. R. Civ. P. 37(a)(3)(B)(i). The Court may compel a corporation or other entity to make a designation under Rule 30(b)(6) or 31(a)(4). *Id.* 37(a)(3)(B)(ii). The Court may sanction a party for failing to appear for his or her deposition after that party has been served with proper notice. *Id.* 37(d)(1)(A)(ii). And the Court may hold a person in contempt for failing to comply with a subpoena ad testificandum. *Id.* 45(g). But there is no mechanism to compel a party to make a specific individual available to testify as to matters within his or her personal knowledge. *Thompson v. Louisville Jefferson County Metro Government, et al.*, 2025 WL 4110920, at *2

(W.D. Ky. Nov. 25, 2025). "The proper way to compel a deponent to attend a deposition is through notice under Rule 30(b)(1), and if necessary, a subpoena under Rule 45." *Id.* The objecting party may then move for a protective order or to quash the subpoena. If the Court denies, either wholly or in part, the motion, *then* the Court may compel the objecting party to permit the deposition. *Id.* 26(c)(2).

### III.     Analysis

Plaintiffs contend that they are entitled to discovery from Defendant Sullivan and from the individual school board members related to "the Board's intent and motivation behind its decision to remove the subject books." (Doc. No. 71 at 6.) In support of their argument, plaintiffs rely heavily on Judge Richardson's order denying their request for a preliminary injunction, wherein the Court stated that "the proper inquiry is into the Board's motivation in order to determine whether an impermissible motive drove the Board to remove (or restrict) the books at issue." (Doc. No. 45 at 20.) Plaintiffs claim that the legislative privilege does not apply to the requested information because the book removals were an administrative act, not a legislative act; and because factual information and communications are not protected by the privilege. Plaintiffs further argue that, even if the privilege does apply, it is qualified, and the requested information should be disclosed. Lastly, plaintiffs argue that the Rutherford County Board of Education, through its members, has waived any claim to assert the privilege. Defendants disagree on all points.

"Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). The proper inquiry is "whether, stripped of all considerations of intent and motive, [the] actions were legislative." *Id.* at 55. The burden rests on the individual school board members to establish that they are entitled to legislative privilege. *See Virginia State Conf. NAACP v. Cnty. Sch. Bd. of*

*Shenandoah Cnty.*, No. 5:24-CV-040, 2025 WL 2585686, at *5 (W.D. Va. Sept. 5, 2025) (citations omitted); *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323, 344 (E.D. Va. 2015) (citations omitted). "Documents and communications related to non-legislative tasks are not protected by the legislative privilege." *League of Women Voters of Michigan v. Johnson*, No. 17-14148, 2018 WL 2335805, at *6 (E.D. Mich. May 23, 2018). "[L]egislative privilege, like all evidentiary privileges, must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Nashville Student Org. Comm. v. Hargett*, 123 F. Supp. 3d 967, 969 (M.D. Tenn. 2015) (internal quotation marks omitted). The Sixth Circuit has recognized that "[n]ot all governmental acts by local government bodies are necessarily legislative in nature, and the various activities of most local or municipal officials cannot be characterized as only administrative, legislative or judicial." *Lilly Inv., LLC v. City of Rochester*, No. 14-cv-10712, 2015 WL 753491, at *11 (E.D. Mich. Feb. 23, 2015) quoting *Jaggers v. City of Alexandria,* No. 08–5213, 2009 WL 233244, at *4 (6th Cir. Feb. 2, 2009) (unpublished opinion). The Court considers two factors when determining whether a party's conduct falls within the sphere of legislative activity. *Jaggers*, 2009 WL 233244, at *4. The first factor is whether the actions taken were "legislative in form," meaning whether they were integral steps in the legislative process. *Lilly*, 2015 WL 753491, at *11 (citation omitted). The second factor is whether the actions were "legislative in substance," meaning "whether they bore all the hallmarks of traditional legislation, including whether they reflected discretionary policymaking decisions implicating the budgetary priorities' of the government and the services the government provides to its constituents." *Id.* (citation omitted).

The *Jaggers* court listed several examples of acts that were "legislative in form," including "voting for an ordinance" and "introducing a budget and signing into law and ordinance." *Jaggers*, 2009 WL 233244, at \*5. In *Jaggers*, the act at issue was the Alexandria City Council's decision not to approve a development plan pursuant to the already enacted zoning ordinance. *Id.* The court found nothing in the record to support the claim that the Council members' authority to approve or disapprove a plan in compliance with the established zoning ordinance "stemmed from their legislative authority." *Id.*; *accord Lilly*, 2015 WL 753491, at \*12 ("Defendants have not met their burden of showing that the potential witnesses' acts taken pursuant to this ordinance were legislative in form.").

The *Jaggers* court further found that the act of approving or disapproving a development plan was not legislative in substance. *Jaggers*, 2009 WL 233244, at \*5. The court noted that "[a]lthough zoning is ordinarily a legislative activity, it is not always legislative for the purposes of legislative immunity, or in this case, the analogous issue of legislative privilege." *Id.* The court opined:

> If the underlying purpose of zoning activity is to establish general policy, then it is legislative. If, however, the zoning action involves applying existing zoning rules to a specific property, the question of legislative immunity becomes more difficult because applying known rules and legislation to make a zoning decision in this way is more likely to be administrative rather than legislative.

*Id.* (internal quotation marks and citations omitted); *see also Lilly*, 2015 WL 753491, at \*12 (defendants failed to establish that their act of applying existing zoning rules to grant or deny a site plan permit to a single property was legislative rather than administrative in substance).

Following the analysis above, the individual school board members are not entitled to legislative privilege. Whether legislative privilege applies to a school board's decision to remove specific books from school libraries pursuant to an existing policy has yet to be addressed by the Sixth Circuit. Defendants argue that the Court should rely on the out-of-district opinion in *Parnell*

7

*v. Sch. Bd. of Lake Cnty.*, No. 4:23-CV-414, 2024 WL 5508347 (N.D. Fla. Sept. 24, 2024), wherein the district court applied legislative privilege to a school board's decision to remove a book because the decision was a "forward looking policy decision." However, this Court finds defendants' reliance on *Parnell* unavailing. The court in *Parnell* based its reasoning, at least in part, on the premise that removing a book from school libraries was a policy-making decision because it affected all students in the school district. 2024 WL 5508347, at *2. That reasoning fails to consider the pointed effect on the specific books that were removed. The Court cannot square *Parnell*'s reasoning with *Jaggers* and *Lilly*. From the Court's view, the reasoning in *Jaggers* and *Lilly* more squarely applies to the acts that are at issue in this case. Much like the City Council in *Jaggers*, the acts at issue here involved the application of existing policy, not the enacting of a general policy. The distinction here is that defendants' implementation of the policy resulted in the removal of specific books from school libraries. As argued by plaintiffs, this act was not legislative in nature. The facts before the Court illustrate how defendants made "personalized assessments" of "individual" books to be removed, not an impersonal analysis of policy. *See Canary v. Osborn*, 211 F.3d 324, 330 (6th Cir. 2000) (affirming denial of summary judgment based on legislative immunity, where vote against renewal of assistant principal's contract affected only the assistant principal). In fact, the generalized policy already existed, and plaintiffs have no quarrel with it. Where plaintiffs take umbrage is how the Rutherford County Board of Education applied the Policy to specific books. The issue that plaintiffs are entitled to explore is whether, and, if so, to what extent, the individual school board members' decisions on each book was tainted by a discriminatory purpose. The Court thus finds that plaintiffs have established that information related to defendants, to the individual board members' decision-making process, and to the motivations behind the decisions to remove the books at issue, are relevant.

8

The Court finds that defendants have failed to establish that defendants' acts were legislative in form or substance and thus were administrative in nature. Based on the Court's determination that legislative privilege does not apply here, the Court need not address the remainder of plaintiffs' arguments related to qualified privilege or waiver.

The only issue left to resolve is the technical procedural issue of what the Court is compelling. Plaintiffs served their interrogatories and document requests (Doc. No. 71-1) on named parties under Rule 33(a) and Rule 34(a). The Court can compel responses and document production under Rule 37(a). Defendant Sullivan, as a named party, was noticed for a deposition under Rule 30(b). (Doc. No. 64-1 at 2–4.) As the Court noted above, it can compel responses to specific questions but cannot compel deposition attendance following a Rule 30(b) notice. Plaintiffs will have to decide the next step regarding defendant Sullivan; sanctions are available should defendant Sullivan fail to appear after being properly noticed for a deposition. *See* Fed. R. Civ. P. 37(d)(1)(A)(i); 7 Moore's Federal Practice—Civil § 30.21 ("A witness who is a party or party representative need not be subpoenaed for deposition. A proper deposition notice is sufficient to compel the party witness's attendance, with sanctions available should the party fail to appear."). The Rule 30(b) notices served on the individual school board members (Doc. No. 64-1 at 5–19) are more problematic. The individual school board members are not named parties, and as far as the Court can tell, the Rutherford County Board of Education has not designated any of the individual school board members to speak for it in a deposition under Rule 30(b)(6). *See City of Gallatin v. Gallatin Data Ctrs., LLC*, No. 3:24-cv-00868, 2026 U.S. Dist. LEXIS 63843, at *13 (M.D. Tenn. Jan. 9, 2026) (denying sanctions against an organizational defendant, where there was no evidence that three employees who failed to appear for depositions were designated under Rule 30(b)(6) or 31(a)(4)); 7 Moore's Federal Practice—Civil § 30.25 ("To take a deposition pursuant

9

to Rule 30(b)(6), the deposing party must, in its notice of examination and, when required, in a subpoena, name a public or private corporation, a partnership or association, a government agency, or other entity. The notice then must describe with reasonable particularity the matters on which examination is requested."). The only way to depose the individual school board members would appear to be through subpoenas under Rule 45. *See* 9 Moore's Federal Practice–Civil § 45.02 ("If a deposition of a nonparty is sought, not only must the nonparty be subpoenaed, but notice of the deposition must be provided to all parties as required by Fed. R. Civ. P. 30(b)(1)."); *see also* Fed. R. Civ. P. 30(a)(1) ("The deponent's attendance may be compelled by subpoena under Rule 45."). The Court, therefore, currently has no jurisdictional instrument through which it can enforce either attendance of the individual school board members at a deposition or answers from them to specific deposition questions.

## IV. Conclusion

For all of the foregoing reasons, plaintiffs' motion to compel (Doc No. 71) is GRANTED IN PART to require defendants to respond to the following: Interrogatory Nos. 3, 4, 5, 8, 9, 10, 11, and 12; and Requests for Production of Documents Nos. 1, 2, 3, 4, and 6. The motion is DENIED with respect to compelling deposition testimony, but WITHOUT PREJUDICE to refile appropriate motions upon proper deposition noticing under Rules 30 or 45 and either a failure to appear or a proper objection to a subpoena.

It is so ORDERED.

LUKE A. EVANS
United States Magistrate Judge