# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | | |
|---|---|---|
| **RACHEL ROE, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | No. 3:25-cv-00429 |
| | ) | |
| **RUTHERFORD COUNTY BOARD OF** | ) | **JUDGE RICHARDSON** |
| **EDUCATION, et al.** | ) | **MAGISTRATE JUDGE EVANS** |
| | ) | |
| **Defendants.** | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
RULE 72(a) MOTION FOR REVIEW OF NONDISPOSITIVE ORDER
OF MAGISTRATE JUDGE (DE 86)**

---

COME NOW Defendants Rutherford County Board of Education and James Sullivan, in his official capacity as Director of Rutherford County Schools (collectively, "Defendants"), by and through counsel, and, pursuant to 28 U.S.C. § 636, Federal Rule of Civil Procedure 72(a), and Local Rule 72.01, Defendants hereby submit the following Memorandum of Law in Support of Rule 72(a) Motion for Review of Nondispositive Order of Magistrate Judge (DE 86), and would respectfully state unto the Court as follows:

## PRELIMINARY STATEMENT

This Motion arises from a discovery dispute concerning Plaintiffs' efforts to compel discovery relating to the Rutherford County Board of Education's decisions to remove or restrict books from school libraries and Defendants' assertion of legislative privilege in response to those requests. Defendants' discovery responses are attached hereto as Exhibit "A".

On February 19, 2026, Defendants filed an Expedited Motion for Protective Order (DE 64) and supporting Memorandum of Law (DE 65) seeking protection from discovery into legislative

deliberations, motivations, and related materials based on legislative privilege. Plaintiffs filed an Objection (DE 66) the same day, arguing that the motion was procedurally improper and duplicative of issues already raised in the parties' discovery-dispute proceedings.

On March 6, 2026, Plaintiffs filed a Motion to Compel Documents, Interrogatory Responses, and Deposition Testimony (DE 71). Plaintiffs sought to compel responses to multiple interrogatories and requests for production and to obtain deposition testimony from Board members and Defendant Sullivan concerning the process and motivations underlying the challenged book-removal decisions. On March 27, 2026, Defendants filed a Response in Opposition to Plaintiffs' Motion to Compel (DE 79), arguing that the requested discovery was barred by legislative privilege because the challenged conduct constituted legislative activity and the discovery requests improperly sought information concerning legislative deliberations, motivations, and evaluative judgments. On April 10, 2026, Plaintiffs filed a Reply (DE 85).

On April 24, 2026, Magistrate Judge Evans entered a Memorandum Order (DE 86) granting Plaintiffs' Motion to Compel in part. The Court held that Plaintiffs were entitled to certain discovery relating to individual Board members' internal thoughts, deliberations, and decision-making processes concerning the removal of the books at issue.

Defendants respectfully submit that the Magistrate Judge's Order rests on a misapplication of the governing distinction between legislative and administrative conduct, improperly discounts controlling and persuasive authority addressing legislative school board actions, and erroneously fails to recognize that the relevant inquiry concerns the Board's collective motivation as a policymaking body to curate the school libraries within its school system. Because the Order

compels disclosure of privileged legislative deliberations and motivations contrary to applicable law, review under Rule 72(a) is warranted, and the Order should be reversed and vacated.[1]

**<u>ARGUMENT</u>**

Federal Rule of Civil Procedure 72(a) requires a district court to modify or set aside any part of a magistrate judge's order on non-dispositive pre-trial matters that the district court finds to be "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

"The clearly erroneous standard applies to factual findings, while legal conclusions are reviewed under the contrary to law standard." *Vanderbilt Univ. v. Scholastic, Inc.*, 321 F. Supp. 3d 830, 832–33 (M.D. Tenn. 2018) (quoting *E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.*, 621 F.Supp.2d 603, 605 (W.D. Tenn. 2009)). Here, Defendants challenge the Magistrate Judge's legal conclusions and assert that they are contrary to law. "When examining legal conclusions under the contrary to law standard, the Court may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Id.*; *see also* 32 Am. Jur. 2d Fed. Cts. 143 (2008) ("A magistrate judge's order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.").

The Magistrate Judge's Order is contrary to law because: (1) it improperly rests on a misapplication of the governing legal distinction between legislative and administrative acts; (2) it improperly relies on case law easily distinguishable from this case and does not adequately address this Court's prior decision in *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 2021 WL

---

[1] Defendants intend to seek a stay of the discovery compelled by the Order (DE 86) and other discovery that implicates the legislative privilege pending resolution of these Rule 72(a) objections. Defendants will first confer with opposing counsel as required by the Scheduling Order to determine whether the requested stay can be resolved without court intervention. If the parties are unable to reach agreement, Defendants intend to file a motion seeking such relief.

5882653, at *5–6 (M.D. Tenn. Dec. 13, 2021) and persuasive authority from the Northern District of Florida addressing this precise issue in *Parnell v. School Board of Lake County*, No. 4:23-cv-414, 2024 WL 5508347, at *2 (N.D. Fla. Sept. 24, 2024); and (1) it erroneously permits discovery into the subjective motivations and deliberative processes of individual Board members and fails to recognize that inquiry in this case "is really focused on the Board's collective motivation, as opposed to the motivation of individual Board members" (PageID# 20; 21 n.17).

## I. The Magistrate Judge's Determination That the Challenged Conduct Was Administrative Rather Than Legislative Was Contrary to Law

The Magistrate Judge's conclusion that the Board's conduct was administrative rather than legislative rests on an incorrect application of the legal standard. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). An act is legislative where it reflects discretionary policymaking decisions bearing "all the hallmarks of traditional legislation." *Id.* at 55. By contrast, administrative conduct generally involves the application of fixed standards to specific facts. *Jaggers v. City of Alexandria*, 2009 WL 233244, at *5 (6th Cir. 2009). Here, the Magistrate Judge erred by failing to consider the nature of the Board's actions as required by *Bogan*, which illustrates that the Board's decisions to remove certain books from Rutherford County Schools libraries were legislative in both form and substance.

First, the Order improperly characterizes the Board's actions as a mere application of existing policy to specific books despite Plaintiffs' own allegations confirming otherwise. The Order (DE 86) states, "the generalized policy already existed, and plaintiffs have no quarrel with it. Where plaintiffs take umbrage is how the Rutherford County Board of Education applied the Policy to specific books." PageID #1155. But the issue here is not about whether the books met the standards for removal in the Policy, and that characterization is undermined by Plaintiffs' own

allegations. Plaintiffs instead contend that the Board acted outside or inconsistently with the Policy itself. For example, in addition to voting on books to remove, Plaintiffs allege that the Board debated whether to slow down the removal process and voted on whether to establish a committee of library specialists to review the books. DE 1, PageID# 12, 13. Plaintiffs also allege that the Board debated which standards to use to evaluate the books. DE 1, PageID# 12. These allegations are inconsistent with the Order's characterization of the Board's actions as mechanically applying fixed procedures under Policy 4.403. The mere fact that there is a policy in existence does not convert a legislative act into an administrative act.

Second, the Magistrate Judge incorrectly applied legal standards from the land use cases of *Jaggers v. City of Alexandria*, 2009 WL 233244, at *5 (6th Cir. 2009) and *Lilly Inv., LLC v. City of Rochester*, 2015 WL 753491, at *11–12 (E.D. Mich. 2015), both of which involved strict application of existing land use regulations and vested property rights, to conclude that the Board's actions at issue in this case were administrative. *Jaggers* and *Lilly Investments* are easily distinguishable from the case at bar, which involves the Board receiving public input, debating appropriate standards, empaneling additional review mechanisms not expressly required by Policy 4.403, and voting on what materials would remain available ***throughout the entire school system***.

In *Jaggers*,[2] the plaintiffs planned to build a gas station sought a zoning map amendment to rezone a portion of the portion of the property to Highway Commercial. 2009 WL 233244, at *1. The Court noted that the procedures utilized by the city council were in compliance with an already enacted zoning ordinance. *Id.* at *5. The Court explained, "[i]f the underlying purpose of the zoning activity is to establish general policy, then it is legislative. If, however, the zoning action

---

[2] Notably, *Jaggers* addressed absolute legislative immunity from suit asserted by city council members wo were sued in their individual capacities, not legislative privilege in discovery. 2009 WL 233244, at *4–5. Therefore, *Jaggers* is inapposite to the current matter.

involves applying existing zoning rules to a specific property, the question of legislative immunity becomes more difficult because applying known rules and legislation to make a zoning decision in this way is more likely to be administrative rather than legislative." *Id.* (*citing* 8A Eugene McQuillian, The Law of Municipal Corporations § 25.217 (3d ed. 2008) ("[A] zoning ordinance vesting in the municipal council the power to determine whether a building permit should be granted ... ordinarily is regarded as administrative, rather than legislative in character.") (other internal citations and quotations omitted)). The Court thus found that the city council did not meet its burden to show that their acts were legislative in substance. *Id.* The Court specifically emphasized that ***nothing in the record suggested the council members' authority to approve or deny the plan stemmed from independent legislative policymaking authority***. *Id*. at *6. Even then, the Sixth Circuit remanded the matter because factual questions remained concerning whether the council members' actions reflected broader policy concerns or goals. *Id.*

Likewise, *Lilly Investments* involved a site-plan dispute concerning the application of existing zoning standards to a single property. *Lilly Inv., LLC*, 2015 WL 753491, at *11–12. There, the officials were evaluating whether a specific proposal complied with preexisting zoning requirements. *Id.* at *12. Because the officials in *Lilly* were operating under an existing ordinance and deciding whether a single site plan complied with those standards, their actions were deemed administrative in both form and substance, and thus not protected by legislative privilege under the standard set forth in *Jaggers*. *Id.* The Court specifically noted that, "[s]imilar to the ordinance in *Jaggers,* the City of Rochester's ordinance delineates ***certain acts that must be taken by the Commission within a certain time frame, and does not appear to leave any room for discretion***." *Id.* at *13 (emphasis added). The Court also explained that, "just as in *Jaggers*, Defendants have offered no evidence to support a conclusion that their act of applying ***existing zoning rules*** to grant

or deny a site plan permit ***to a single property*** was legislative rather than administrative in substance." *Id.* (emphasis added) (citing *Hesse Realty, Inc. v. City of Ann Arbor*, 232 N.W. 2d 695 (Mich. App. Ct. 1975) (noting that while municipalities "are given great breadth in establishing general land use patterns through their power to zone," their "ability to regulate specific uses which the zoning scheme allows, through site plan approval and building permit issuance, ***must be carefully circumscribed by specific, published standards***" and thus generally qualifies as an administrative, rather than legislative, act)). *Id.* (emphasis added).

The Board's actions here were fundamentally different from the actions in *Jaggers* and *Lilly* because those cases involved the application of existing zoning standards to a particular landowner with vested property rights for a specific parcel of property. In that context, the governing body functions in an administrative role by determining whether a proposed use satisfies preexisting criteria. Here, by contrast, the Board was not determining the rights of an individual citizen under fixed standards. Plaintiffs instead contend that the Board departed from the procedures contemplated by Policy 4.403 and instead exercised its independent judgment. *See, e.g.,* Complaint DE 1, PageID# 12, 13. Unlike the one-off zoning and permitting decisions in *Jaggers* and *Lilly* that affected a single property owner, the Board made district-wide determinations concerning the availability of educational materials that affected the entire school system. Those decisions required the weighing of educational policy considerations regarding the materials that RCS would offer to its students and were undertaken by the Board as the County's final policymaking authority regarding school governance. A consideration of "age appropriateness," "educational suitability," and consistency with the "educational mission" do not compel a singular or mechanical result. They instead require the exercise of policy judgment concerning what content should be accessible in publicly funded school libraries, and are therefore

distinguishable from the application of permitting and zoning policies at issue in *Jaggers* and *Lilly* involving single properties.

This case is further distinguishable from *Jaggers* and *Lilly*, where the land use decisions did not stem from any "legislative policymaking authority." 2009 WL 233244, at *5; 2015 WL 753491 at *13. Here, the Board had clear legislative authority under the Tennessee Age-Appropriate Materials Act to create policies to ensure that school library materials be "suitable for the age and maturity levels of the students who may access the materials" and "suitable for, and consistent with, the educational mission of the school." *See* T.C.A. §§ 49-6-3803, *et seq.* Further, even aside from the Age-Appropriate Materials Act, the Tennessee General Assembly has vested local school boards with broad authority of the management and operation of public schools. *See* T.C.A. § 49-2-201, *et seq.* Unlike in *Jaggers* and *Lilly*, where the zoning ordinances left no room for discretion and the city councils had no authority to legislate beyond their existing zoning ordinances, *Lilly*, 2015 WL 753491 at *13, the Board here both possessed and exercised such inherent legislative authority in determining how to curate school library collections across the entire school district.

A school board's determination regarding what materials should be included within a public-school library system is inherently legislative in nature. School libraries necessarily operate within finite physical space and limited public resources, requiring elected school boards to exercise policy discretion regarding which materials will be housed, maintained, restricted, or removed in order to serve the educational mission of the school system as a whole. In carrying out that function, Board members were exercising the legislative authority entrusted to them by the voters of Rutherford County to determine what materials are appropriate for students within the school system. Those decisions were made only after receiving and considering input from parents,

citizens, educators, librarians, and staff, and necessarily required balancing competing viewpoints and policy considerations regarding how best to curate the district's library collections for the collective student community. Such forward-looking policy judgments concerning the content and character of school library collections are paradigmatic legislative determinations and cannot be equated to the type of administrative conduct at issue in land use cases like *Jaggers* and *Lilly*.

The Magistrate Judge also erred in concluding that the Board's conduct was not legislative in form. (DE 86 at PageID #1156). The case of *Canary v. Osborn* cited in the Order is inapposite. In *Canary*, the Sixth Circuit addressed a vote affecting the renewal of a single assistant principal's employment contract. 211 F.3d 324, 330 (6th Cir. 2000). That "personalized" and "individual" personnel decision, *id.*, bears little resemblance to the Board's actions here, which involved the review and removal of more than one hundred books and affected the availability of educational materials throughout the entire Rutherford County school system.

Even under *Jaggers*, acts such as "voting for an ordinance" constitute conduct that is legislative in form. 2009 WL 233244, at *5. Here, the Board voted on challenged materials after public discussion and deliberation concerning district-wide educational policy. Those votes were formal exercises of the Board's policymaking authority concerning what content would remain available throughout the school system. The fact that the Board considered particular titles does not transform those actions into mere administrative enforcement. Legislative bodies routinely make policy judgments through votes affecting specific subjects while still exercising legislative authority.

Thus, by reducing the Board's actions to the type of administrative conduct at issue in land use cases like *Jaggers* and *Lilly*, the Magistrate Judge, with due respect to the Magistrate Judge,

misapplied the governing legal distinction between administrative and legislative acts. The Order is therefore contrary to law and should be reversed and vacated.

**II. The Magistrate Judge's Reliance on Distinguishable District Court Decisions While Disregarding Authority from This Court and Persuasive Authority Directly Addressing This Precise Issue Was Contrary to Law**

The Magistrate Judge's Order (DE 86) is further contrary to law because it fails to meaningfully engage with the persuasive authority addressing school board decisions on educational resources in *Parnell v. School Board of Lake County*, No. 4:23-cv-414, 2024 WL 5508347, at *2 (N.D. Fla. Sept. 24, 2024) and this Court's prior analysis of legislative privilege in *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:20-cv-01023, 2021 WL 5882653, at *5–6 (M.D. Tenn. Dec. 13, 2021).

The Order rejected *Parnell* because it purportedly "fails to consider the pointed effect on the specific books that were removed." DE 86, PageID# 1155. But although *Parnell* involved the removal of one specific book, the removal decision was applied to school libraries ***district-wide***. 2024 WL 5508347, at *2. This was not a decision like *Jaggers* or *Lilly* that involved the application of existing zoning standards to a single landowner with vested property rights in a specific parcel of property, or like *Canary* that affects a single employee. Thus, the mere fact that the board's decision concerned a particular title did not prevent the *Parnell* Court from properly recognizing the broader policymaking character of the school board's actions. The Magistrate Judge failed to consider the district-wide nature of the book removal decisions at issue from a democratically-elected school board and improperly rejected the reasoning of *Parnell* on this basis despite its closely analogous facts. Like the Board here, the school board in *Parnell* received public input, debated controversial issues concerning educational materials, and made f***orward-looking determinations*** affecting students throughout the district. *Id.* The court concluded that those

actions constituted "quintessential policy decision[s] about how best to educate" students. *Id.* The Magistrate Judge's failure to meaningfully address this closely analogous authority—while relying instead on distinguishable zoning and land-use decisions—was contrary to law.

The Magistrate Judge also failed to adequately address this Court's own decision in *Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:20-cv-01023, 2021 WL 5882653, at \*5–6 (M.D. Tenn. Dec. 13, 2021). In *Doe*, this Court concluded that a school board's approval of a district-wide budget constituted legislative conduct. 2021 WL 5882653, at \*5–6. The Court explained that budget approval involves a general policy decision affecting the school system as a whole, rather than an action directed at any particular individual. 2021 WL 5882653, at \*5–6. Although the Court acknowledged that certain personnel decisions could be administrative, it emphasized that this distinction did not alter the legislative character of the board's vote on the budget itself. *Id.* Because the challenged action involved a policy that was applicable district-wide, the court concluded that it was inherently legislative in nature. *Id.*

The same reasoning applies here. The Board's decisions regarding what materials would remain accessible throughout Rutherford County schools were not directed at a single employee, property owner, or individualized dispute. They reflected collective policy judgments concerning educational resources across the district. Although the Order briefly cites *Doe* in a footnote, it never addresses *Doe*'s substantive analysis distinguishing legislative and administrative conduct. Instead, the Order (DE 86) relied primarily on an unpublished Sixth Circuit zoning case and a Michigan district court land-use decision involving materially different governmental functions and factual circumstances.

11

Accordingly, the Order (DE 86) is contrary to law because it disregards the reasoning in *Parnell* and *Doe*, both of which recognized that district-wide school board decisions concerning educational policy constitute legislative conduct rather than individualized administrative action.

**III.      The Magistrate Judge's Failure to Recognize That the Proper Inquiry Concerns the Board's Collective Motivation Rather Than the Subjective Motivations of Individual Board Members Was Contrary to Law**

The Magistrate Judge further erred by treating this case as requiring inquiry into the intentions and motivations of individual Board members despite the Board members not being named as parties and despite the decisions at issue being made by the Board as a whole. In doing so, the Order loses sight of this Court's prior recognition that the relevant inquiry concerns the Board's ***collective*** motivation as a policymaking body, not the personal thought processes of individual legislators.

This Court previously explained that the inquiry in this case "is really focused on the Board's collective motivation, as opposed to the motivation of individual Board members or the motivation of the Board majority in adopting and implementing Board Policy 4.403." DE 45 at PageID# 20; 21 n.17. The public record and other documents produced in discovery already contain extensive evidence concerning the Board's collective actions, including meeting recordings, Board minutes, public comments, votes, and the policies and procedures utilized during the review process. Plaintiffs therefore possess ample evidence through which to argue collective intent—the relevant inquiry as previously recognized by this Court—without compelling discovery into confidential legislative deliberations and individual mental impressions.

Legislative privilege exists precisely to protect the independence of legislative deliberations and to prevent inquiry into the subjective motivations of individual legislators. *See Bogan*, 523 U.S. at 54–55; *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951). And the existence of

constitutional claims does not automatically permit inquiry into legislators' subjective thought processes. *See Bogan*, 523 U.S. at 54–55; *United States v. Gillock*, 445 U.S. 360, 373 (1980) (recognizing the importance of legislative privilege outside the narrow federal-criminal context). By focusing on the subjective motivations of individual Board members rather than the collective conduct of the Board itself, the Order improperly expands discovery into areas protected by legislative privilege and contrary to this Court's prior guidance regarding the nature of the relevant inquiry.

Therefore, the Magistrate Judge acted contrary to law by permitting discovery into the subjective motivations and deliberative processes of individual Board members where the relevant inquiry concerns the Board's collective conduct.

## CONCLUSION

For these reasons, the Magistrate Judge's Order is contrary to law and Defendants respectfully request that the Court sustain Defendants' objections under Rule 72(a), reverse and vacate the Order (DE 86), and grant such further relief as the Court deems appropriate.

**Respectfully submitted,**

**HUDSON, REED & CHRISTIANSEN, PLLC**

**By: /s/ Nick C. Christiansen**
      **JEFF REED, #15000**
      **NICK C. CHRISTIANSEN, #30103**
      **JASON N. KING, #027749**
      16 Public Square North
      P.O. Box 884
      Murfreesboro, TN  37133
      (615) 893-5522
      jreed@mborolaw.com
      nchristiansen@mborolaw.com
      jking@mborolaw.com

      *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on **<u>May 8, 2026</u>** a true and correct copy of the foregoing document was served on all parties via the District Court's electronic filing system.

| | |
|---|---|
| **Anand Agneshwar**<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019<br>Amand.Agneshwar@arnoldporter.com | **Lucas Cameron – Vaughn**<br>ACLU<br>PO Box 120160<br>Nashville, TN 37212<br>lucas@aclu-tn.org |
| **Dori Ann Hanswirth**<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019<br>Dori.Hanswirth@arnoldporter.com | **Theresa House**<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019<br>Theresa.House@arnoldporter.com |
| **Kerry E. Knox**<br>Castelli & Knox, LLP<br>117 S Academy Street<br>Murfreesboro, TN 37130<br>kek@castelliknox.com | **Zee Scout**<br>ACLU of Tennessee<br>P.O. Box 120160<br>Nashville, TN 37212<br>zscout@aclu-tn.org |
| **Leah Novak**<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019<br>Leah.Novak@arnoldporter.com | **Zoe Rachael Staum**<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019<br>Zoe.Staum@arnoldporter.com |

**/s/Nick C. Christiansen**
**Nick C. Christiansen**