# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### AT NASHVILLE

| | |
|---|---|
| RACHEL ROE, et al., | |
| Plaintiffs, | Case No. 3:25-cv-00429 |
| v. | Judge Eli Richardson |
| | Magistrate Judge Luke Evans |
| RUTHERFORD COUNTY BOARD OF EDUCATION; JAMES SULLIVAN, | |
| Defendants. | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR REVIEW OF NONDISPOSITIVE ORDER OF MAGISTRATE JUDGE**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. ii

Table of Authorities ......................................................................................................... iii

Introduction ...................................................................................................................... 1

Background ....................................................................................................................... 2

Legal Standard ................................................................................................................. 5

Argument .......................................................................................................................... 6

I.    The Court's Order Rejecting Defendants' Claims of Legislative Privilege Was Not Contrary to Law. ................................................................................................................... 6

    A.    The Court's Order Properly Found that the Board's Book Removals Were Administrative Acts to Which the Legislative Privilege Does Not Apply. ................................................. 7

        1.    Defendants Fabricate a Standard for Court Analysis that Does Not Exist. ................... 7

        2.    The Court's Order Is Consistent with the Law that Legislative Privilege Only Protects Steps Within the Legislative Process and Does Not Extend to Acts Following Enactment. ............................................................................................................... 7

        3.    The Court's Order Properly Considered *Jaggers* and *Lilly*, Among Other Cases. ........ 12

        4.    The Court's Order Properly Considered *Brogan*, Out-Of-Circuit *Parnell*, and *Doe*.... 14

    B.    An Inquiry Into the Board's Collective Action Necessarily Involves an Inquiry Into the Individual Board Members' Decision-Making. ................................................................. 16

II.    Additional Grounds Support Affirming the Court's Order................................................... 19

Conclusion ...................................................................................................................... 20

Certificate of Service ...................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177 (11th Cir. 2009) ................... 19

*Adam Cmty. Ctr. v. City of Troy*, 381 F. Supp. 3d 887 (E.D. Mich. 2019) ..................................... 8

*Apotex Inc. v. Gilead Scis., Inc.*, No. 2019 WL 2410468 (N.D. Cal. June 7, 2019)....................... 7

*Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540 (W.D. Tenn. Nov. 30, 2012) ...................................................................................................................... 17

*Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015) ............... 8, 9, 17

*Bogan v. Scott-Harris*, 523 U.S. 44 (1998).................................................................... 14, 15

*Canary v. Osborn*, 211 F.3d 324 (6th Cir. 2000)........................................................... 13

*City of Murfreesboro v. Bfi Waste Sys. of Tenn., LLC*, 2026 WL 964766 (M.D. Tenn. Apr. 9, 2026) ................................................................................................................... 5

*Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 WL 4837508 (N.D. Ill. Oct. 12, 2011) ........................................................................................................ 6

*Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854 (E.D. Mich. 2017)............................................. 6

*Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 2021 WL 5882653 (M.D. Tenn. Dec. 13, 2021) .................................................................................................................. 16

*Gamboa v. Ford Motor Co.*, 2020 WL 7029325 (E.D. Mich. Nov. 30, 2020)............................. 7

*Hartman v. Moore*, 547 U.S. 250 (2006)................................................................... 17

*Haskell v. Washington Twp.*, 864 F.2d 1266 (6th Cir. 1988) ............................................ 8

*Jaggers v. City of Alexandria,* 2009 WL 233244 (6th Cir. Feb. 2, 2009) ........................... 12, 13

*League of Women Voters of Mich. v. Johnson*, 2018 WL 2335805 (E.D. Mich. May 23, 2018) ............................................................................................................... passim

*Lee v. Vanderbilt Univ.,* 2022 WL 2311765 (M.D. Tenn. June 27, 2022) ................................ 7

*Lilly Invs. LLC v. City of Rochester*, 2015 WL 753491 (E.D. Mich. Feb. 23, 2015) ............. 12, 14

*Loesel v. City of Frankenmuth*, 2010 WL 456931 (E.D. Mich. Feb. 4, 2010) ........................... 17

*McComas v. Bd. of Educ. Rock Hill Loc. Sch. Dist.*, 2009 WL 10709695 (S.D. Ohio May 11, 2009) ................................................................................................................... 17

*Munoz v. Citimortgage, Inc.*, 2021 WL 2964058 (M.D. Fla. Feb. 25, 2021) ................................ 7

*Nashville Student Org. Comm. v. Hargett*, 123 F. Supp. 3d 967 (M.D. Tenn. 2015) .. 6, 12, 19, 20

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 2019 WL 3003661 (M.D. Tenn. Apr. 19, 2019) ................................................................................................................................... 6

*Parnell v. Sch. Bd. of Lake Cnty.*, 2024 WL 5508347 (N.D. Fla. Sept. 24, 2024) ................. 15, 17

*Pearson v. City of Grand Blanc*, 961 F.2d 1211 (6th Cir. 1992) ................................................... 8

*PEN Am. Cntr., Inc. v. Escambia Cnty. Sch. Bd.*, 787 F. Supp. 3d 1292 (N.D. Fla. 2024) .......... 16

*Ramsbottom v. Ashton*, 2025 WL 1146666 (M.D. Tenn. Jan. 17, 2025) .................................. 5, 6

*S.C. State Conf. of NAACP v. McMaster*, 584 F. Supp. 3d 152 (D.S.C. 2022) ........................... 17

*Scott v. Greenville Cnty.*, 716 F.2d 1409 (4th Cir. 1983) ............................................................. 8

*Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980) ................................ 8

*Vaduva v. City of Xenia*, 780 F. App'x 331 (6th Cir. 2019) ......................................................... 8

**Statutes**

Tenn. Code. Ann. §49-6-3803 ......................................................................................... 2, 9, 10

**Other Authorities**

12 Fed. Prac. & Proc. Civ. § 3069 (3d ed.) ................................................................................... 6

**Rules**

Fed. R. Civ. P. 72(a) ...................................................................................................................... 5

## INTRODUCTION

This case is about the Rutherford County School Board's (the "Board")[1] violation of students and authors' First Amendment rights through its removal of dozens of books from circulation in school libraries. Plaintiffs allege, *inter alia*, that Defendants violated their First Amendment rights through the Board's politically motivated efforts to censor access to ideas, preventing students from reading and discussing books involving viewpoints with which the Board disagrees.[2] Plaintiffs take issue specifically with Defendants' decisions to remove 61 books during the academic year 2024 to 2025 (comprising less than half of the Board's book removals that year), from Rutherford County School libraries. Compl., ECF 1 ¶ 51 (the "Subject Books").

In its Preliminary Injunction Order, the Court stated that, in determining whether these actions violated the First Amendment, "the proper inquiry is into the Board's motivation in order to determine whether an impermissible motive drove the Board to remove (or restrict) the books at issue." Prelim. Inj. Order, ECF 45 at 20 (hereinafter "PI Order"). And "[o]f course, an inquiry into the Board's motivation necessarily involves an examination of the comments and motivations of individual Board members." *Id.* at 20 n.17. Thus far, Plaintiffs have been unable to obtain critical discovery relating to exactly these issues because Defendants have improperly asserted legislative privilege as a wholesale bar to *any* discovery about the motivations for their book removal decisions.

After substantial efforts to meet and confer, on March 6, Plaintiffs were forced to move to compel Defendants to provide this essential evidence. On April 24, Magistrate Judge Evans granted Plaintiffs' requests to compel Defendants to respond to interrogatories and produce

---

[1] The relevant Board members are Claire Maxwell, Frances Rosales, Katie Darby, Tammy Sharp, Caleb Tidwell, Butch Vaughn, and Stan Vaught.
[2] *See, e.g.*, Compl., ECF 1 ¶ 6 (students seek access to a "diverse array of books" in their school libraries); *id.* ¶¶ 47-49, 64 (the book removals interfere with students' ability to access information).

documents, holding that Defendants "failed to establish that [their] acts were legislative in form or substance" and concluding that they "thus were administrative in nature." Mot. to Compel Order, ECF 86 at 9 (hereinafter "Court's Order"). Therefore, "legislative privilege does not apply here" [and] "the individual school board members are not entitled to legislative privilege." *Id*. at 7, 9.

Defendants now seek review of that decision pursuant to Federal Rule of Civil Procedure 72(a). But rather than satisfy the higher standard applicable to review of a Magistrate Judge's order—namely, clearly erroneous on the facts or contrary to law—they merely recite the *same* arguments that failed to satisfy their burden to invoke the legislative privilege before Magistrate Judge Evans. Defendants' arguments also ignore Magistrate Judge Evans' reasoning, misconstrue case law to fit their narrative, and contradict their own statements. Accordingly, the Court should deny the motion and affirm the Court's Order.

## BACKGROUND

In March 2022, the Tennessee State Legislature enacted the "Age Appropriate Materials Act," Tenn. Code. Ann. §49-6-3803 (the "Act"), which authorizes local education agencies, such as a school board, to pass policies as to how their schools will ensure their library collections contain materials that are "age appropriate." Compl., ECF 1 ¶ 12. In accordance with the Act, in July 2022, the Board adopted Policy 4.403 (the "Policy"), *see* Ex. A., which sets forth the Board's policy for determining whether specific library materials are regarding "age appropriate" under the Act, Compl., ECF 1 ¶ 15.[3]

Beginning in or around September 2024, the Board began removing books from Rutherford County Schools' libraries pursuant to the Policy. *Id*. ¶ 17. Over the course of a year, the Board determined that over 140 books were out of compliance and either removed them from school

---

[3] Both Act and the Policy have been amended several times since their enactments. This litigation does not challenge the Act, the Policy, or their amendments, but rather the Board's implementation of the Policy to the Subject Books.

libraries or restricted access. *Id*. ¶¶ 14, 44. They reached this decision even though library specialists, whom the Board had specially commissioned to review the books in question, determined that about 70% of the books did not violate the Policy. *Id*. ¶ 43.

On April 16, 2025, Plaintiffs filed suit asserting claims that Defendants' actions violated the First Amendment, challenging Defendants' decisions to remove the 61 Subject Books. *Id*. ¶ 51.

On August 7, 2025, Plaintiffs served Defendants with their First Set of Interrogatories, which sought information on the decision-making process for the removal of books, the materials considered during that process, and the reasoning behind those decisions, as well as Plaintiffs' First Set of Requests for Production, which sought documents related to the same. ECF 71-1.

On October 20, 2025, Defendants interposed objections, refusing to respond to half of Plaintiffs' interrogatories and more than one-third of Plaintiffs' requests for documents, on the grounds that they were shielded by the legislative privilege. Ex. B. Defendants categorically refused to provide such information or documents and provided Plaintiffs with a privilege log that, rather than itemizing the documents that were being withheld, grouped tranches of documents into single entries and broadly asserted legislative privilege. ECF 71-3. The log failed to include any date range, authors, or recipients of these various documents and communications. *Id.*

In November 2025, Plaintiffs raised their disagreement with Defendants' assertion of the legislative privilege via email during discussions of a motion to extend discovery deadlines and in later verbal conversations. In December 2025, Plaintiffs asked to meet and confer to discuss legislative privilege. On January 8, 2026, the parties met and conferred to discuss legislative privilege and other discovery disputes. On January 21, the parties reached an impasse.

3

On February 12, the parties filed a Joint Motion for Discovery Conference. Joint Mot., ECF 61. The day before the scheduled discovery conference, February 19, Defendants filed an Expedited Motion for Protective Order concerning the same discovery at issue in the parties' Joint Motion for Discovery Conference. Exped. Mot., ECF 64. That same day, Plaintiffs objected to the motion because it did not comply with Local Rule 37.01 and duplicated issues to be briefed in Plaintiffs' expected Motion to Compel. ECF 66. On February 20, Magistrate Judge Evans held a discovery conference. On February 24, the Court denied Defendants' motion and allowed Plaintiffs to file their Motion to Compel. Discov. Conf. Order, ECF 67.

On March 6, Plaintiffs moved to compel. Pl. Mot. to Compel, ECF 71 (hereinafter "Pl. Mot."). On March 27, Defendants responded in opposition. Def. Opp. to Mot. to Compel, ECF 79 (hereinafter "Def. Opp."). On April 10, Plaintiffs filed their reply. Pl. Reply, ECF 85.

On April 24, the Court rejected Defendants' assertion of the legislative privilege. Court's Order. It accordingly held that Defendants "failed to establish that defendants' acts were legislative in form or substance and thus were administrative in nature." *Id*. at 9. The Court also RULED that Plaintiffs are entitled to discovery of "information related to defendants, the individual school board members' decision-making process, and to the motivations behind the decisions to remove the books at issue" to explore whether those decisions were "tainted by a discriminatory purpose." *Id*.

Granting the Motion to Compel in part, the Court's Order required Defendants to respond to Interrogatory Nos. 3, 4, 5, 8, 9, 10, 11, and 12; and to Requests for Production of Documents Nos. 1, 2, 3, 4, and 6 because "legislative privilege does not apply here[.]" *Id.* at 10. Currently before the Court is Defendants' Motion to Review the Court's Order. ECF 87, 88 (hereinafter "Def. Obj.").

<u>**LEGAL STANDARD**</u>

A district judge may review a magistrate judge's resolution of a non-dispositive matter under the "clearly erroneous" standard for factual findings and the "contrary to law" standard for legal conclusions pursuant to Rule 72(a).  Fed. R. Civ. P. 72(a).

"When (as here) a district judge is reviewing a magistrate judge's order related to *discovery* matters in particular, in considering whether a magistrate judge's decision on a discovery matter is contrary to law or clearly erroneous, a district judge considers whether the magistrate judge abused their discretion in making their decision.  Put another way, a magistrate judge's decision with respect to a discovery matter is contrary to law or clearly erroneous only if that decision constitutes an abuse of discretion." *City of Murfreesboro v. Bfi Waste Sys. of Tenn., LLC*, 2026 WL 964766, at \*4 (M.D. Tenn. Apr. 9, 2026) (Richardson, J.) (internal citations omitted) (emphasis in original).

This standard is highly deferential to the Magistrate Judge's decision, and "[t]he party seeking to reverse a Magistrate Judge's ruling concerning discovery bears a heavy burden, in part, because the Magistrate Judge is afforded broad discretion in these matters."  *Id*; *see also Ramsbottom v. Ashton*, 2025 WL 1146666, at \*1 (M.D. Tenn. Jan. 17, 2025) ("Magistrate judges 'have broad discretion to regulate nondispositive matters' … Reversal is typically warranted only if that discretion is abused.").  "When a matter is within the discretion of a judge, the judge's decision on the matter is not contrary to law unless it reflects an abuse of discretion." *Amos v. Lampo Grp., LLC*, No. 3:21-CV-00923, 2023 WL 3590676, at \*2 (M.D. Tenn. May 22, 2023) (Richardson, J.).

"[T]he Court is not empowered to reverse the magistrate judge's finding simply because this Court would have decided the issue differently." *Shabazz v. Schofield*, 2014 WL 6605504, at \*1 (M.D. Tenn. Nov. 19, 2014).  Indeed, mere disagreement is insufficient to show the decision is

5

contrary to law. *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*, 2019 WL 3003661, at \*1 (M.D. Tenn. Apr. 19, 2019) (Richardson, J.) (declining to disturb Magistrate Judge's order).

"In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge." *Ramsbottom*, 2025 WL 1146666, at \*1 (quoting 12 Fed. Prac. & Proc. Civ. § 3069 (3d ed.)) (affirming Magistrate Judge's order granting in part plaintiffs' motion to compel).

## ARGUMENT

**I. THE COURT'S ORDER REJECTING DEFENDANTS' CLAIMS OF LEGISLATIVE PRIVILEGE WAS NOT CONTRARY TO LAW.**

Legislative privilege may be invoked in federal question cases to shield state legislators from compelled disclosure of evidence relating to "actions taken within the scope of legitimate legislative activity." *League of Women Voters of Mich. v. Johnson*, 2018 WL 2335805, at\*3 (E.D. Mich. May 23, 2018) ("*LOWV*"). The party asserting the privilege bears the burden of proving it is applicable to the circumstances. *See Cratty v. City of Wyandotte*, 296 F. Supp. 3d 854, 858 (E.D. Mich. 2017). Legislative privilege applies only to acts that are legislative in nature, rather than to administrative acts, and it is "strictly construed." *Nashville Student Org. Comm. v. Hargett*, 123 F. Supp. 3d 967, 969 (M.D. Tenn. 2015). This Court has held that the legislative privilege "must be … accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'" *Id.* (quoting *Comm. for a Fair & Balanced Map v. Ill. State Bd. of Elections*, 2011 WL 4837508, at \*7 (N.D. Ill. Oct. 12, 2011)).

Here, Defendants argue that the Court's Order finding that the legislative privilege does not apply was contrary to law because it purportedly did not sufficiently "engage" with Defendants' interpretation of the law. Defendants fail, however, to identify any conclusion that is

contrary to law, much less one that exceeds the Magistrate Judge's discretion. As a result, their arguments for reversal are merely another way of saying that Defendants disagree with the Magistrate Judge's legal conclusions, which falls far short of satisfying their burden to justify alteration.

### A. The Court's Order Properly Found that the Board's Book Removals Were Administrative Acts to Which the Legislative Privilege Does Not Apply.

#### 1. Defendants Fabricate a Standard for Court Analysis that Does Not Exist.

As a preliminary matter, Defendants contend that the Magistrate Judge's order must be overturned because the Court purportedly did not "meaningfully engage" with case law. Def. Obj. at 10. The Court is not required to discuss every case cited in the parties' briefings in its decision. *See Gamboa v. Ford Motor Co.*, 2020 WL 7029325, at *1 (E.D. Mich. Nov. 30, 2020) (denying the motion for reconsideration and explaining "[a] court need not address every case cited by a party"). Courts routinely reject requests to review decisions that demand otherwise. *See Munoz v. Citimortgage, Inc.*, 2021 WL 2964058, at *1 (M.D. Fla. Feb. 25, 2021) (denying motion for reconsideration and rejecting argument that party was prejudiced because the court did not explicitly address two cases cited in their response); *see also Apotex Inc. v. Gilead Scis., Inc.*, 2019 WL 2410468, at *2 (N.D. Cal. June 7, 2019) (denying motion for reconsideration and explaining that the court's failure to reference three cases cited by party in its opposition brief does not demonstrate failure to consider dispositive legal arguments). Defendant's argument to the contrary here likewise should be rejected.

#### 2. The Court's Order Is Consistent with the Law that Legislative Privilege Only Protects Steps Within the Legislative Process and Does Not Extend to Acts Following Enactment.

The Court's Order adequately considered analogous case law in its determination that the Book Removals were an administrative act, not a legislative act. Numerous cases support

Magistrate Judge Evans' conclusion that a governing body's *implementation* or *enforcement* of a policy is administrative. *See, e.g.*, *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 734-36 (1980) (finding that legislators were not acting in legislative capacity when enforcing state bar code against individuals); *LOWV*, 2018 WL 2335805, at *3 (E.D. Mich. May 23, 2018); *Bethune-Hill v. Va. State Bd. of Elections*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015).

For example, the Court's Order is entirely consistent with the standard that the Sixth Circuit has adopted, and district courts have applied, to distinguish legislative acts (which may be privileged) from administrative acts (which are not): Acts that "adopt prospective, legislative type rules" are legislative in nature, but when local government officials "do more" than adopt a rule, "and take the next step into the area of *enforcement*" of a policy, that step is an administrative act.[4] *Haskell v. Washington Twp.*, 864 F.2d 1266, 1278 (6th Cir. 1988) (emphasis added) (quoting *Scott v. Greenville Cnty.,* 716 F.2d 1409, 1423 (4th Cir. 1983)), *abrogated on other grounds by Vaduva v. City of Xenia*, 780 F. App'x 331, 336 (6th Cir. 2019); *see also Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1220-21 (6th Cir. 1992) (referencing the same distinction); *accord Adam Cmty. Ctr. v. City of Troy*, 381 F. Supp. 3d 887, 899 (E.D. Mich. 2019) (finding individual board members were not entitled to legislative immunity because their decision to deny rezoning application was administrative enforcement not adopting prospective rules).

Likewise, the Court's Order correctly applied the rule that the legislative privilege "only protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment." *Bethune-Hill*, 114 F. Supp. 3d at 343. Documents created

---

[4] The Court recognized that the specific question of "[w]hether legislative privilege applies to a school board's decision to remove specific books from school libraries pursuant to an existing policy has yet to be addressed by the Sixth Circuit." Court's Order at 7. It appropriately found that the standard established by these cases to evaluate legislative versus administrative acts governed here.

8

*after* a policy's enactment are not shielded from discovery by the legislative privilege. *LOWV*, 2018 WL 2335805, at *6.

Since the legislative privilege does not apply to administrative acts, particularly those that take place after enactment, it does not apply here. Applying these rules, Magistrate Judge Evans correctly found that the acts at issue here are administrative because they involve the *application* of a policy to individual cases. The Court accurately identified the polices at issue—the Act and the Policy. Court's Order at 1 ("[T]he book removals are occurring under the Age-Appropriate Materials Act of 2022 (the Act), Tenn. Code Ann. §§ 49-6-3801 to § 49-6-3803, and Rutherford County Board of Education Policy 4.403 (the Policy)."). The Court specifically found:

- The Act "requires local boards of education to adopt policies for developing and reviewing school library collections," consistent with stated guidelines, *id.* (quoting Tenn. Code Ann. § 49-6-3803(a)), and that

- The Policy "sets forth a process through which materials in the Rutherford County school library collection that meet certain obscenity criteria defined [by statute] 'shall be immediately removed from all libraries within the school district ….'" *Id.* at 1-2 (quoting the Policy).

The Court further noted, accurately, that this litigation does not challenge the enactments or amendments of either the Act or the Policy, but rather Defendants' application of the Policy to specific Subject Books. Court's Order at 8 (finding that "the generalized policy already existed, and plaintiffs have no quarrel with it. Where plaintiffs take umbrage is how the Rutherford County Board of Education applied the Policy to specific books."). For this reason, the requested discovery does not seek documents or information relating to the enactment of the Act or the Policy, but rather to the Board's post-enactment application of the Policy.

Despite this, Defendants argue that "[t]he mere fact that there is a policy in existence does not convert a legislative act into an administrative act," and that the Act and Policy are in fact irrelevant to their assertion of legislative privilege because the Board had "independent authority" to set policies for book removal. Def. Opp. at 5, 8. But this is plainly incorrect.

First, Defendants have repeatedly claimed *in this litigation* they were implementing the Act and Policy. When opposing Plaintiffs' Motion for Preliminary Injunction, Defendants stated that "this case involves actions by a local board of education and Director of Schools taken *pursuant to state statute.*" *Id.* at 2 (emphasis in original). In Defendants' October 2025 response to Interrogatory No. 4, where Plaintiffs asked for the reasoning behind the removal of each book, Defendants stated, "[p]lease refer to the Age Appropriate Materials Act, *which is the basis for the decisions challenged by Plaintiffs in this case.*" Ex. B at 8 (emphasis added). These admissions illustrate that the Board considers its conduct to be enforcement of the pre-existing policy when it removes a specific book. This post-enactment enforcement step is administrative.

Defendants also have *public statements* that their removal decisions were not setting new policies, but rather implementing the Act and Policy. The section of the Board's webpage announcing its removal decisions is entitled "Removed Library Materials (*as per Policy 4.403*)[.]" Ex. C (emphasis added). It further states that reviews are conducted "[i]n accordance with Board Policy and Tennessee State law (TCA 49-6-3803)" and "to ensure the content aligns with state law[.]" *Id.* Defendants also note that books flagged for removal "will appear before the board for final decision, *as stated in Policy 4.403.*" *Id.* (emphasis added). In short, Defendants' arguments in appealing the Court's Order contradict themselves.

Second, the unambiguous text of the Policy and Board meeting minutes support Magistrate Judge Evans' conclusion that the Policy and the Act are general policies that the Board is

implementing. The Policy includes instructions and criteria for how the Board should consider books for removal. It lists criteria to apply to the library collection and instructs the Board to consider book recommendations when evaluating individual books for adherence to guidelines. Ex. A at 2-3. This criteria includes pre-set definitions for identifying offensive material that should be reviewed and removed by the Board. *Id.* at 1. If there were any doubt left, in addition to statements in litigation and in public statements, contemporaneous Board meeting minutes show that the Board in fact evaluated challenged books "under the standards established in [the Age Appropriate Materials Act]." Ex. D at 16-17. By following the Policy in accordance with the Act, as the Board repeatedly said it was doing, the Board was enforcing existing criteria to individual books, not adopting new policies governing future removals.

Defendants also argue that Magistrate Judge Evans' reasoning is contrary to law because the Board's decisions affected a book's availability within the entire school district. Def. Obj. at 7-8. But the fact that a school system may have multiple copies of a book in different locations is irrelevant to the question of whether the Board is applying, as opposed to enacting, a pre-existing policy in banning that individual book. Indeed, no case in the Sixth Circuit supports the assertion that the larger the impact of the council's decision, the more likely it is to be legislative, and Defendants cite no such authority that was overlooked on this question. Furthermore, the Court's Order considers this argument and properly rejects it. *See infra* Section I.A.3-4. It specifically considered "the premise that removing a book from school libraries was a policy-making decision because it affected all students in the school district," and found that it "fails to consider the pointed effect on the specific books that were removed." Court's Order at 8. The Court properly concluded that the fact that those individual books were then removed from multiple libraries across the

school district does not alter the administrative nature of the decision-making that led to their removal.

### 3. The Court's Order Properly Considered *Jaggers* and *Lilly*, Among Other Cases.

Defendants' additional attempts to discredit analogous in-circuit case precedent, *Jaggers* and *Lilly*, fall short of meeting the high standard of showing the decision is contrary to law. Def. Obj. at 5-10.

First, Defendants mischaracterize the Court's Order as relying solely on *Jaggers* and *Lilly*. *See id.* at 5-9. That is inaccurate. Magistrate Judge Evans also fully considered the analysis of legislative privilege in *LOWV* and *Nashville Student Organizing Committee*. *See id.* at 6 (citing *LOWV*, 2018 WL 2335805, at *6; *Nashville Student Org. Comm.*, 123 F. Supp. at 969). Magistrate Judge Evans also considered "several examples of acts" listed in *Jaggers* to analyze whether the current circumstances are legislative or administrative. Court's Order at 7.

Second, the Court's application of *Jaggers* was correct. *Jaggers* illustrates that implementations of discretionary authority, like the book removal decisions here, are administrative. *Jaggers v. City of Alexandria,* 2009 WL 233244 (6th Cir. Feb. 2, 2009). In *Jaggers*, the court evaluated whether the council members' decision to approve a development plan was undertaken to establish a general policy (legislative) or apply existing standards to a specific property (administrative). *Id.* at *5. The Sixth Circuit determined the act was not legislative in form because the ordinance procedures invoked the council's managerial or administrative powers. *Id.*

Magistrate Judge Evans did not err in recognizing that the reasoning in *Jaggers* is analogous here. *Jaggers*, too, considered a prospective ruling that was applied after a similar process: hearings, commission recommendations, and the council's decision. The Court

appropriately found that, "[m]uch like the City Council in *Jaggers*, the acts at issue here involved the application of existing policy, not the enacting of a general policy," Court's Order at 8, and that "defendants' implementation of the policy resulted in the removal of specific books from school libraries," *id.*

Defendants do not assert that the Court's Order misapplied *Jaggers*, but rather that *Jaggers* is distinguishable because the relief granted for a single property differs from relief granted affecting multiple books and libraries. Def. Obj. at 6-7. This is insufficient to show the Court's Order is contrary to law. Further, there is no indication that the Board removed the Subject Books to establish a general policy. Instead, the Board followed the guidance of existing standards to decide the removal of specific books. The Board considered each book on an individual basis, as well as book reviews and book-specific recommendations, when applying the pre-existing Policy to ban that particular book. Plaintiffs seek information on that implementation decision, *i.e.*, how and why the Board decides that the Policy should be enforced against certain books and not others. Pl. Mot. at 8. This mirrors the analysis in *Jaggers*, as the Court appropriately found.

If there was any doubt, the Court's Order also highlights another Sixth Circuit decision affirming the district court's denial of summary judgment based on legislative immunity, where the school board's vote against renewal of an assistant principal's contract affected only the assistant principal. *See Canary v. Osborn*, 211 F.3d 324 (6th Cir. 2000). "The facts before the Court illustrate how defendants made 'personalized assessments' of 'individual' books to be removed, not an impersonal analysis of policy." Court's Order at 8 (quoting *Canary*, 211 F.3d at 330).

Magistrate Judge Evans' analysis of *Lilly Investments, LLC v. City of Rochester*, 2015 WL 753491 (E.D. Mich. Feb. 23, 2015), was also appropriate. Court's Order at 6. Defendants' efforts

to distinguish *Lilly* on grounds that it involved land use are beside the point and far from sufficient to meet their heavy burden of overcoming deference to the Magistrate Judge. In *Lilly*, the court held that the magistrate judge properly reasoned that defendants failed to prove that the act of applying existing rules to a particular case was legislative rather than administrative, analogous to the reasoning adopted by Magistrate Judge Evans. *See* 2015 WL 753491, at *3-4. Looking to *Lilly* for appropriate guidance was not contrary to law.

Finally, Plaintiffs' allegation that the Board deviated from the standards with an unconstitutional motive does not change the nature of the act from administrative to legislative. Defendants offer no reasonable basis for asserting that the Board's decision to implement its guidelines inconsistently or unconstitutionally alters the administrative nature of the enforcement. Def. Obj. at 4-5. Such argument defies logic. Police officers may exercise discretion in enforcing existing traffic laws. That discretion does not mean they are enacting new rules. Nor does that flexibility change the fact that such conduct occurs in the enforcement phase rather than the creation of the rules.

4. The Court's Order Properly Considered *Brogan*, Out-Of-Circuit *Parnell*, and *Doe*.

Contrary to Defendants' assertion that the Court's Order "erred by failing to consider the nature of the Board's actions as required by *Bogan*," Def. Obj. at 4, the Court did just that. Magistrate Judge Evans referred to *Bogan* when laying the foundation for the Court's analysis. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Court's Order at 5 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998)). "The proper inquiry is 'whether, stripped of all considerations of intent and motive, [the] actions were legislative.'" *Id.* (quoting *Bogan*, 523 U.S. at 55). Magistrate Judge Evans proceeded to evaluate the two factors, form and substance, used in determining legislative activity. *See id.* at

14

6-9. Defendants cannot claim abuse simply because the Court did not adopt Defendants' requested conclusion.

Defendants' additional criticism that the Court's Order "does not adequately address" *Parnell* is similarly mistaken. Def. Obj. at 3-4. This Court is under no obligation whatsoever to consider out-of-circuit case law. Regardless, Magistrate Judge Evans dedicated an entire page of analysis addressing *Parnell*. Court's Order at 8. Magistrate Judge Evans properly determined that appellate and district court decisions within the Sixth Circuit are more instructive than out-of-circuit decisions. The Court then found that, in light of the reasoning in in-circuit decisions *Jaggers*, *Lilly*, and *Canary*, and the Court's own analysis, "defendants' reliance on *Parnell* [is] unavailing." *Id.*

The factual circumstances in *Parnell* also differ from the facts here. Magistrate Judge Evans evaluated Defendants' argument that *Parnell* applied legislative privilege "because the decision was a 'forward looking policy decision.'" *Id.* And he found "[t]hat reasoning fails[.]" *Id.* The board in *Parnell* was not following any pre-existing policy at all, and instead banned a book based on a purely ad-hoc determination. *Parnell v. Sch. Bd. of Lake Cnty.*, 2024 WL 5508347, at *2 (N.D. Fla. Sept. 24, 2024). By contrast, here, the Board is explicitly enforcing the Act and the Policy. *See supra* Section I.A.2. At issue in this case, unlike in *Parnell*, is the *enforcement* of the Policy as it applies to individual books.

Moreover, the *Parnell* decision is unsettled within its own district. Defendants cannot reasonably argue that Magistrate Judge Evans' rejection of *Parnell* is contrary to law when the sole federal case citing *Parnell* agrees with Magistrate Judge Evans' reasoning and finds that school board book removals are "functionally an administrative act." *PEN American Center, Inc. v. Escambia Cnty. Sch. Bd.*, 787 F. Supp. 3d 1292, 1297-98 (N.D. Fla. 2024) (explaining the

15

"functional difference" between the "adoption of a policy detailing what content is generally prohibited" and the "determination that a specific book must be removed … because it contains such content"). *Escambia*, which was decided after *Parnell* in the same federal district, found that the "removal/restriction decision" is "more akin to" an administrative act than a legislative act because it "involves the case-by-case *application* of the standards in state law and school board policy to a specific book, not the *formulation* of general standards that apply to all books." *Id.* at 1297 (emphasis in original). Contrary to Defendants' focus on the impact of the Board's book removals, the court found that the school board's book removal decisions were administrative, even though the decisions had a potential "district-wide impact." *Id.* at 1297-98.

Defendants finally criticize the Court's Order for not "meaningfully engag[ing]" with *Doe* because the "Order briefly cites *Doe* in a footnote," but "never addresses *Doe*'s substantive analysis[.]" Def. Obj. at 11. Again, this does not prove the Court's Order is contrary to law. As noted above, Defendants cannot decide for the Court how much analysis is sufficient. *See supra* Section I.A.1. Even so, the Court's Order is consistent with the reasoning in *Doe*. *See Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 2021 WL 5882653, at *3-4 (M.D. Tenn. Dec. 13, 2021). The Court's decision in *Doe* is consistent with Magistrate Judge Evans' analysis that a board's decision is administrative if specific individuals were targeted, just as specific books were targeted here. *Id.* at *3. Defendants' preference for *Parnell* and interpretation of *Doe* cannot replace the Court's analysis, nor does it prove the Court's conclusion was contrary to law.

### B. An Inquiry Into the Board's Collective Action Necessarily Involves an Inquiry Into the Individual Board Members' Decision-Making.

The Court also had a reasonable basis for granting discovery into the decision-making of the individual Board members. Courts in this circuit commonly compel discovery from legislators where, as here, the discovery concerns non-legislative acts. *See, e.g.*, *Loesel v. City of*

*Frankenmuth*, 2010 WL 456931, at *6 (E.D. Mich. Feb. 4, 2010) (allowing city council testimony); *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, 2012 WL 6003540, at *5 (W.D. Tenn. Nov. 30, 2012) (allowing discovery of individuals on motivation and intent); *McComas v. Bd. of Educ. Rock Hill Loc. Sch. Dist.*, 2009 WL 10709695, at *3 (S.D. Ohio May 11, 2009) (compelling testimony on board communications).

First, the Requests seek information that is fundamental to the parties' dispute. Motivation is a central element of Plaintiffs' First Amendment claims. *See, e.g.*, *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (holding that retaliatory animus is a required element of a cognizable First Amendment claim); *S.C. State Conf. of NAACP v. McMaster*, 584 F. Supp. 3d 152, 163 (D.S.C. 2022) (finding the evidence sought was "highly relevant to the intentional discrimination claims at the heart of the complaint, because the Legislature's 'decision making process itself is the case'"), *argued sub nom.*, *Alexander v. S.C. State Conf. of NAACP* (U.S. Oct. 11, 2023). For such claims, "proof of a legislative body's discriminatory intent is relevant and extremely important as direct evidence." *See Bethune-Hill*, 114 F. Supp. 3d at 339 (citation omitted).

As this Court has already found, to establish a First Amendment violation, Plaintiffs need information regarding that decision-making process and the motivations behind the decisions to remove the books at-issue to prove their claims. PI Order at 20 n.17. The Board's motivation— whether the Board intentionally discriminated against other viewpoints when removing books—*is* the key focus of the case.

In its denial of Plaintiffs' Motion for Preliminary Injunction, the Court confirmed that the motivations of the Board are central to this dispute and should be explored through discovery. *Id.* at 20 & n.17. Not only did this Court find that an "inquiry into school officials' motivations is appropriate in cases like the instant one[,]" *id.* at 15, the Court emphasized that "the *proper* inquiry

is into the Board's motivation in order to determine whether an impermissible motive drove the Board to remove or restrict the books at issue," *id.* at 20 (emphasis added).

The discovery Plaintiffs seek, and Defendants refuse to produce, is likely to shed light on the Board's intent and motivation behind its decision to remove the Subject Books. To date, Defendants have produced only 38 unique documents—none of which speak to the Board's motivations. Of those, Defendants produced only three emails involving the Board (two of which are near-duplicates). Most of the information and documents provided contain no detail on the decision-making process that led to the removal and restriction of the Subject Books from general circulation in school libraries. Defendants have taken the position that practically all information and documents reviewed, created by, or otherwise connected to the Board's decision to remove the Subject Books, is protected from discovery by the legislative privilege. Defendants' refusal to produce this information—essentially leaving Plaintiffs without discovery with respect to the Board's motivations and decision-making process regarding the Subject Books—would severely prejudice Plaintiffs' ability to support their claims.

Second, to prove their claims, Plaintiffs need the opportunity to elicit information and testimony from individual Board members. Logically, there is no other method to collect this information. The individual Board members comprise the collective whole. While discussing leading cases on the issue of book removals from school libraries, the Court acknowledged it must examine the motivations of and comments made by individual board members when evaluating the constitutionality of decisions made by school boards as a collective. *See* PI Order at 20 n.17 (citing *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1207 (11th Cir. 2009)). The Board's actions reflect the decisions and motivations of its individual members.

The Court agreed that "an inquiry into the Board's motivation *necessarily* involves an examination of the comments and motivations of individual Board members." *Id.* at 20 n.17 (emphasis added).  Magistrate Judge Evans' ruling is consistent with this reasoning, finding "[t]he issue that plaintiffs are entitled to explore is whether, and, if so, to what extent, the individual school board members' decisions on each book was tainted by a discriminatory purpose."  Court's Order at 8.

Defendants' argument to the contrary—that individual Board members are exempt from discovery because only the Board as a whole is party to the litigation—is contrary to the Court's prior ruling and the practical reality that only the members can speak to their own decision-making.

Finally, Defendants assert that Plaintiffs possess ample evidence of collective intent.  Def. Obj. at 12.  This has no bearing on whether the Court's Order is contrary to law.  Regardless, it is demonstrably false, as demonstrated above.  *See supra* Section I.B.  Importantly, selective disclosure and self-serving public statements are not substitutes for direct evidence. *See, e.g.*, *LOWV*, 2018 WL 2335805, at *5; *Nashville Student Org. Comm.*, 123 F. Supp. 3d at 971.  This Court also acknowledged as much.  *See* PI Order at 20 & n.17.

## II.      ADDITIONAL GROUNDS SUPPORT AFFIRMING THE COURT'S ORDER.

In short, the Court's Order appropriately found that the legislative privilege did not apply and that the requested discovery is appropriate. There are additional reasons to support this conclusion, namely, that even if the legislative privilege could apply as a threshold matter, it would not bar discovery here for two reasons.  First, even when the legislative privilege applies, it is a qualified privilege.  *See Nasvhille Student Org. Comm.*, 123 F. Supp. 3d at 970 (explaining the five-factor balancing test, which, *inter alia*, focuses on "the relevance of the evidence sought to be protected").  Here, the information that Plaintiffs seek is imperative to proving their claims.  *See*

PI Order at 20; ECF 71 at 14-16; ECF 85 at 4-5.  Second, Defendants have waived the privilege.  ECF 71 at 20-21; ECF 85 at 5.  If the legislative privilege did apply here (and it does not), the qualified privilege is overcome, thereby establishing an independent ground for affirming the Court's Order.  Pl. Mot. at 12-20.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion and adopt the Order.

*/s/ Theresa House*
ARNOLD & PORTER KAYE SCHOLER LLP

Theresa House (admitted *pro hac vice*)
Zoe Staum (admitted *pro hac vice*)
Dori Ann Hanswirth (admitted *pro hac vice*)
Anand Agneshwar (admitted *pro hac vice*)
Leah Novak (admitted *pro hac vice)*
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019
(212) 836-7062
theresa.house@arnoldporter.com
zoe.staum@arnoldporter.com
anand.agneshwar@arnoldporter.com
dori.hanswirth@arnoldporter.com
leah.novak@arnoldporter.com

Zee Scout, BPR # 042637
Lucas Cameron Vaughn, BPR # 036284
American Civil Liberties Union Foundation of
Tennessee
P.O. Box 120160
(615) 320-7142
zscout@aclu-tn.org
lucas@aclu-tn.org

Kerry Knox, BPR # 23302
117 S. Academy Street
Murfreesboro, TN 37130
(615) 896-1000
kek@castelliknox.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was sent to all counsel of record via the District Court's electronic filing system on May 22, 2026.

/s/ Zoe Staum

21