## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| RACHEL ROE, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:25-cv-00429 |
| | ) | |
| RUTHERFORD COUNTY BOARD OF | ) | JUDGE RICHARDSON |
| EDUCATION, et al. | ) | MAGISTRATE JUDGE EVANS |
| | ) | |
| Defendants. | ) | |

---

### DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 72(a) MOTION FOR REVIEW

---

COME NOW Defendants Rutherford County Board of Education and James Sullivan, in his official capacity as Director of Rutherford County Schools (collectively, "Defendants"), by and through counsel, and submit this Reply to Plaintiffs' Response in Opposition to Defendants' Rule 72(a) Motion for Review (DE 89) and would respectfully state unto the Court as follows:

### I. Rule 72(a) Requires *De Novo* Review Of Legal Questions

Plaintiffs are incorrect that Rule 72(a) imposes a deferential standard of review for Defendants' Motion (DE 89). When a party objects to a nondispositive magistrate judge order on the ground that it is "contrary to law," and the objection involves a question of law, the correct standard of review is *de novo*, **not** abuse of discretion. *See Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 221, n. 9 (6th Cir. 2019) (" [A] 'contrary to law' determination is essentially made *de novo*"); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010) (holding that "when review of a non-dispositive motion by a district judge turns on a pure question of law, that review is plenary under the 'contrary to law' branch of the Rule 72(a) standard," and that there is "no practical difference" between Rule 72(a) review of legal questions and de novo review under Rule

72(b)); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("the phrase 'contrary to law' indicates plenary review as to matters of law").[1]

Defendants' Rule 72(a) Motion does not challenge an ordinary discovery management decision such as the proportionality of a particular request, or whether marginally relevant documents should be produced. Rather, the Order turns on the legal question of whether the Board's challenged actions were legislative or administrative for purposes of legislative privilege. That classification determines whether the privilege applies at all and whether Plaintiffs may obtain discovery into the internal deliberations and motivations of individual Board members. And, because disclosure of privileged legislative materials would cause harm that cannot be meaningfully undone after production, independent review of that legal issue is particularly important here. Accordingly, because the existence and scope of the privilege depend on the proper legal characterization of the Board's acts, the District Court should review that question of law *de novo* under Rule 72(a)'s "contrary to law" standard—not under an abuse of discretion standard.[2]

## II. The Magistrate Judge's Order Improperly Treated The Board's Actions As Administrative Rather Than Legislative

When a Magistrate Judge's conclusion is reviewed *de novo*, as required here, such conclusion is entitled to no deference. *Welch v. Bisignano*, 2026 WL 37629, at *9 (M.D. Tenn. Jan. 6, 2026). Here, the Magistrate Judge's Order (DE 86) misapplied the governing distinction between legislative and administrative conduct by relying on zoning and land use cases involving

---

[1] While the correct standard of review here is *de novo*, Defendants also argue in the alternative that Defendants would prevail even under the more deferential abuse of discretion standard because the Order misapplied the governing distinction between administrative and legislative acts.

[2] Plaintiffs argue that Defendants "fabricate a standard" by suggesting the Order did not meaningfully engage with applicable case law. But Defendants do not contend that a magistrate judge must address every case cited by the parties or provide a line-by-line discussion of each authority. Defendants seek review because the Order either applied the wrong legal framework or, at minimum, misapplied the correct one by treating the Board's district-wide decisions concerning school library materials as administrative rather than legislative. The issue, therefore, is not whether the Order cited enough cases, but whether it correctly applied the governing legislative vs. administrative standard to the Board's conduct. Because it did not, the Order is contrary to law under Rule 72(a).

2

fundamentally different governmental functions and decision-making processes while ignoring relevant case law involving district-wide educational judgments by school boards. The Order is therefore contrary to law and subject to reversal under Rule 72(a).

Plaintiffs respond to Defendants' arguments largely by citing yet more inapposite authority in an attempt to defend the Magistrate Judge's reliance on similarly inapposite authority. First, Plaintiffs rely on *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 734–36 (1980), but that case actually illustrates the relevant distinction. There, the Supreme Court distinguished between the Virginia court's legislative role in promulgating bar rules and its enforcement role in initiating disciplinary proceedings against individual attorneys. *Id.* The Court likened those enforcement proceedings to actions by prosecutors and law-enforcement officers. *Id.* Here, the Board's district-wide curation of library materials is far more analogous to promulgating standards governing the bar than formal disciplinary proceedings against attorneys or prosecutions.

Plaintiffs' reliance on *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1220–21 (6th Cir. 1992), also undermines their position. *Pearson* identified several considerations supporting legislative treatment here, including whether the action involved policymaking, prospective rules, and broad public impact. *Id. Pearson* further explained that conduct tends to be administrative "when a relatively small number of persons are affected on individual grounds." *Id.*[3] That is not the case here. The Board's decisions affected library access throughout the entire district and involved broad policy judgments concerning educational suitability. Notably, Plaintiffs incorrectly argue that no Sixth Circuit authority considers the breadth of an action's impact relevant to the legislative inquiry, but *Pearson*, the very case relied on by Plaintiffs, says otherwise. *Id.* The

---

[3] *Haskell v. Washington Township*, 864 F.2d 1266, 1278 (6th Cir. 1988), cited by Plaintiffs, likewise distinguished between adopting "prospective, legislative type rules" and enforcement actions that "single out specifiable individuals and affect them differently from others." 864 F.2d at 1278. Here, the Board's actions did not single out a specific individual under existing standards but instead made prospective determinations affecting the whole school system.

3

distinction between actions affecting a small number of individuals and broad district-wide policymaking is directly relevant to whether conduct is legislative. And notably, *Pearson* described even a zoning decision affecting a single piece of property as a "close question." *Id.* at 1221. If a site-plan dispute affecting a single parcel of land presents a close call, then the Board's district-wide educational policymaking decisions affecting library access throughout an entire public-school system plainly fall on the legislative side of the line.

Plaintiffs' Response also fails to rehabilitate the Order's reliance on *Jaggers v. City of Alexandria*, 2009 WL 233244 (6th Cir. Feb. 2, 2009), and *Lilly Investments LLC v. City of Rochester*, 2015 WL 753491 (E.D. Mich. Feb. 23, 2015), both of which involved administration of zoning ordinances and application of existing land-use criteria to specific properties.[4] Contrary to Plaintiffs' strained analogy, curating school library collections across an entire school district is fundamentally different from administering a zoning ordinance concerning a particular parcel of land.[5, 6] Plaintiffs' argument wrongly assumes that the existence of the Age-Appropriate Materials Act and Policy 4.403 automatically transforms every subsequent Board action into mere administrative enforcement. But Legislative bodies routinely exercise legislative discretion within existing frameworks because local governing bodies necessarily derive their authority from statutes, ordinances, and policies. If acting pursuant to existing law alone rendered conduct "administrative," then virtually all local legislative activity would lose protection. In this case, Defendants have never disputed that the Board acted in the context of the Act and Policy 4.403.

---

[4] Plaintiffs mischaracterize Defendants' argument regarding *Jaggers* and *Lilly* by suggesting Defendants relied solely on the number of books involved. But Defendants also explained that the Board here engaged in policymaking, received public input, debated standards, and exercised independent legislative discretion. DE 79 at PageID# 926.

[5] The same is true of *Adam Community Center v. City of Troy*, cited by Plaintiffs, which involved denial of a rezoning application concerning a specific property. 381 F. Supp. 3d 887, 899 (E.D. Mich. 2019).

[6] Plaintiffs also argue that the Magistrate Judge correctly treated the Board's actions as administrative because, the personnel decision in *Doe* involved a specific individual, and the Board here considered specific books. But the decision in *Doe* is fundamentally different from decisions at issue here. *See Doe v. Metro. Gov't of Nashville & Davidson Cnty.*, 2021 WL 5882653, at *5–6 (M.D. Tenn. Dec. 13, 2021). Although the Board considered discrete titles as part of that process, its actions were not an isolated personnel decision like in *Doe*.

The point is that the Board was not merely determining whether a single applicant satisfied fixed and preexisting criteria, as in *Jaggers* and *Lilly*. Rather, the Board exercised discretionary authority concerning educational suitability, age appropriateness, and the governance of library collections across the entire school system. The Board's references to the Act and Policy simply reflect a source of its authority, not the absence of independent legislative discretion.

Plaintiffs also argue that *Parnell* and *PEN American Center* demonstrate an unsettled issue even within the Northern District of Florida, but the differing outcomes in those cases come from materially different facts. In *PEN American Center*, the school board acted pursuant to a policy prescribed by statute requiring a formal review-and-appeal process for challenged books, and the court emphasized that the board was engaged in "case-by-case application" of preexisting standards to particular books. 787 F. Supp. 3d at 1297–98. Here, by contrast, Plaintiffs allege that the Board debated what standards should govern review, considered whether to slow or alter the review process, created additional review mechanisms not prescribed by Policy 4.403, received extensive public input, and voted on what materials would remain available throughout the district. *See* DE 1 at PageID# 12–13. Those allegations align far more closely with *Parnell*, where the court recognized a school board's district-wide decisions concerning library materials as "a quintessential policy decision about how best to educate" students. 2024 WL 5508347, at *2.

Plaintiffs further rely on voting rights cases centered on whether the legislative privilege is absolute or qualified, a question the Magistrate Judge never even reached because the Order concluded at the outset that the Board's conduct was administrative rather than legislative. Neither *League of Women Voters of Michigan v. Johnson*, 2018 WL 2335805 (E.D. Mich. May 23, 2018), nor *Bethune-Hill v. Virginia State Board of Elections*, 114 F. Supp. 3d 323, 343 (E.D. Va. 2015), analyzed whether the challenged conduct was legislative or administrative in nature. Plaintiffs' assertion that the Magistrate Judge "fully considered" the legislative-privilege analysis in *League*

5

*of Women Voters* and *Nashville Student Organizing Committee v. Hargett*, 123 F. Supp. 3d 967 (M.D. Tenn. 2015), is therefore simply incorrect.[7]

Finally, Plaintiffs' analogy comparing the Board's actions to police officers enforcing traffic laws confuses basic governmental functions and underscores how far afield Plaintiffs are from the legislative-administrative distinction recognized in the case law. Police officers are law enforcement personnel tasked with enforcing preexisting laws. They are not legislators, they do not engage in policymaking, and no court has ever suggested that routine traffic enforcement constitutes legislative conduct protected by legislative privilege. Equating a district-wide educational decision by an elected school board with a speeding ticket is not a serious analogy.

In sum, the unrelated zoning, land-use, enforcement, and voting-rights cases and false analogies proffered by Plaintiffs do not cure the central problem with the Order (DE 86): none of those cases involve the type of district-wide educational policymaking by a school board that is at issue here. Because the Magistrate Judge's analysis misapplies the governing distinction between legislative and administrative conduct, the Order is contrary to law and should be reversed.[8]

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' Motion (DE 87), Defendants respectfully request that the Court sustain Defendants' objections under Rule 72(a), reverse and vacate the Order (DE 86), and grant such further relief as the Court deems appropriate.

---

[7] To the extent those cases bear on the questions actually presented here, they only reinforce Defendants' position by recognizing that legislative privilege is at least implicated in large, district-wide decisions such as redistricting. Considering the "nature of the act," *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998), redistricting is far more analogous to district-wide library curation decisions than the individualized zoning disputes relied upon in the Order.

[8] Plaintiffs' remaining arguments regarding qualified privilege and waiver likewise fail for the reasons previously stated in Defendants' Memorandum of Law in Support of Motion for Protective Order (DE 65) and Response in Opposition to Plaintiffs' Motion to Compel (DE 79). This case does not arise in the voting rights context where courts have occasionally found the legislative privilege to be qualified, and Defendants have not waived the privilege.

Respectfully submitted,

HUDSON, REED & CHRISTIANSEN, PLLC

By: /s/ Nick C. Christiansen
      **JEFF REED, #15000**
      **NICK C. CHRISTIANSEN, #30103**
      **JASON N. KING, #027749**
      16 Public Square North
      P.O. Box 884
      Murfreesboro, TN  37133
      (615) 893-5522
      jreed@mborolaw.com
      nchristiansen@mborolaw.com
      jking@mborolaw.com

      *Attorneys for Defendants*

7

**CERTIFICATE OF SERVICE**

I certify that on **May 29, 2026** a true and correct copy of the foregoing document was served on all parties via the District Court's electronic filing system.

| | |
|---|---|
| **Anand Agneshwar**<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019<br>Amand.Agneshwar@arnoldporter.com | **Lucas Cameron – Vaughn**<br>ACLU<br>PO Box 120160<br>Nashville, TN 37212<br>lucas@aclu-tn.org |
| **Dori Ann Hanswirth**<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019<br>Dori.Hanswirth@arnoldporter.com | **Theresa House**<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019<br>Theresa.House@arnoldporter.com |
| **Kerry E. Knox**<br>Castelli & Knox, LLP<br>117 S Academy Street<br>Murfreesboro, TN 37130<br>kek@castelliknox.com | **Zee Scout**<br>ACLU of Tennessee<br>P.O. Box 120160<br>Nashville, TN 37212<br>zscout@aclu-tn.org |
| **Leah Novak**<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019<br>Leah.Novak@arnoldporter.com | **Zoe Rachael Staum**<br>Arnold & Porter Kaye Scholer LLP<br>250 West 55th Street<br>New York, NY 10019<br>Zoe.Staum@arnoldporter.com |

**/s/Nick C. Christiansen**<br>**Nick C. Christiansen**